# EXHIBIT "D"

FD 72 10 11 06

**Endorsement No.: 3**                                    **Effective: December 14, 2020**
**Named Insured: Mercury Capital Advisors Group**        **12:01 A.M. Standard Time**
**LP**
**Policy No.: ELU172207-20**                             **Insurer: XL Specialty Insurance Company**

# NEW YORK COINSURANCE ENDORSEMENT – INVESTMENT ADVISERS MANAGEMENT LIABILITY COVERAGE PART

This endorsement modifies insurance provided under the following:

**FINANCIAL SERVICES LIABILITY INSURANCE COVERAGE FORM**

Solely for the purpose of the coverage provided under Section I. Insuring Agreements (A) of the Investment Advisers Management Liability Coverage Part, in accordance with New York State Laws BCL section 726(a)(3):

1.     the Insured Persons are liable to coinsure 0.5% of Loss in excess of the retention for the first $1,000,000 of coverage; and

2.     the retention shall be $5,000 each Insured Person, not to exceed $50,000 in the aggregate.

The Insured Persons shall not be liable to coinsure any Loss in excess of the first $1,000,000 of Loss in excess of the retention under Section I. Insuring Agreements (A).

All other terms, conditions and limitations of this Policy remain unchanged.

*Mercury 000098*

FD 72 07 11 06

| | |
|---|---|
| **Endorsement No.: 4** | **Effective: December 14, 2020** |
| **Named Insured: Mercury Capital Advisors Group LP** | **12:01 A.M. Standard Time** |
| **Policy No.: ELU172207-20** | **Insurer: XL Specialty Insurance Company** |

# NEW YORK DISCLOSURE STATEMENT

This endorsement modifies insurance provided under the following:

**FINANCIAL SERVICES LIABILITY INSURANCE COVERAGE FORM**

This Policy is a claims-made policy.

Coverage under this Policy or any subsequent renewal of this Policy, subject to the terms of the applicable policy, applies only to any "Claim" (as defined herein) made against the Insureds, for a specific Wrongful Act reported during the Policy Period of this Policy or the applicable renewal policy.  All coverage under this Policy ceases upon Termination of Coverage, except for the Automatic Extension Period unless the Optional Extension Period is purchased.

The below officer of the Named Insured, on behalf of the Insureds, acknowledges that he/she has received information from the Insurer or its agent explaining the limitations and potential gaps in coverage of a claims-made policy and that he/she understands these limitations and potential gaps in coverage.

This Policy includes a 60-day automatic extended reporting period, referred to as the Automatic Extension Period.

This Policy provides the Insured with the option to purchase for an additional premium at least a one-year Optional Extension Period from the termination of this Policy.  The premium for the Optional Extension Period is indicated in Item 5 of the Policy's Declarations.

During the first several years of a claims-made relationship between the Insureds and the Insurer, claims-made rates are relatively lower than occurrence rates, and the Insured can expect substantial annual premium increases independent of overall rate level increases, until the claims-made relationships reaches maturity.

All other terms, conditions and limitations of this Policy shall remain unchanged.

*Mercury 000099*

FD 72 08 11 06

**Endorsement No.: 5**
**Named Insured: Mercury Capital Advisors Group LP**
**Policy No.: ELU172207-20**

**Effective: December 14, 2020**
**12:01 A.M. Standard Time**

**Insurer: XL Specialty Insurance Company**

# NEW YORK DEFENSE EXPENSES DISCLOSURE

This endorsement modifies insurance provided under the following:

**FINANCIAL SERVICES LIABILITY INSURANCE COVERAGE FORM**

Defense Expenses reduce and may completely exhaust the applicable Limit of Liability.  To the extent the applicable Limit of Liability is exceeded, the Insurer shall not be liable for Defense Expenses or for the amount of any judgment or settlement. Defense Expenses are also applied to the applicable retention.

This form shall be attached to and made part of the Policy.

The below Officer of the Named Insured, on behalf of the Insureds, acknowledges that he/she read this form and understands the above provisions.

All other terms, conditions and limitations of this Policy shall remain unchanged.

*Mercury 000100*

Manuscript 17927 07 15

| | |
|---|---|
| Endorsement No.: 6 | Effective: December 14, 2020 |
| Named Insured: Mercury Capital Advisors Group LP | 12:01 A.M. Standard Time |
| Policy No.: ELU172207-20 | Insurer: XL Specialty Insurance Company |

Coverage Part:  Investment Advisers Management Liability; Investment Advisers Professional Liability

# CRYSTAL & CO ENDORSEMENT

In consideration of the premium charged:

(1)    The term "Application," as defined in Section I General Definitions of the General Terms & Conditions of the Policy, shall include any public documents filed by an Insured with any federal, state, local or foreign regulatory agency (including but not limited to the Securities and Exchange Commission (SEC)) within the one (1) year period immediately preceding the Inception Date of this Policy.

(2)    Section I General Definitions (G) of the General Terms & Conditions of the Policy is amended to read in its entirety as follows:

"(G)    'Loss' means damages, judgments, settlements or other amounts (including pre-judgment and post-judgment interest, punitive, exemplary or multiplied damages where insurable by law) in excess of the Retention that the Insured is obligated to pay, and Defense Expenses, whether incurred by the Insurer or the Insured, in excess of the Retention.  Loss, other than Defense Expenses, will not include:

(1)    matters which are uninsurable under the law pursuant to which this Policy is construed; and

(2) fines, penalties or taxes imposed by law.

NOTE:  With respect to judgments in which punitive damages are awarded, the law of the jurisdiction most favorable to the insurability of punitive damages shall control, provided such jurisdiction:

(1) is where such punitive damages where awarded;

(2)    is where the Named Insured is incorporated or otherwise organized or has a place of business, or

(3) is where the Insurer is incorporated or has its principal place of business."

(3)    The term "Subsidiary," as defined in Section I General Definitions (J) of the General Terms and Conditions of the Policy, is amended to read in its entirety as follows:

"(J)    'Subsidiary' means any entity during any time in which the Named Insured owns, directly or through one or more Subsidiary(ies), more than fifty percent (50%) of the outstanding securities representing the present right to vote for the election of such entity's directors or members of such entity's Board of Managers."

(4)    Section II General Conditions (C)(1) of the General Terms and Conditions of the Policy is amended to read in its entirety as follows:

"(1)    As a condition precedent to any right to payment under this Policy, the Insured shall give written notice to the Insurer of any Claim as soon as practicable after it is first made and the Chief Executive Officer, Chief Financial Officer or General Counsel of the Insured first becomes aware of such Claim, but in no event later than sixty (90) days after the expiration of the Policy Period."

Page 1 of 7

© 2015 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

*Mercury 000101*

(5)  Section II General Conditions (C)(3) of the General Terms and Conditions of the Policy is amended to read in its entirety as follows:

"(3)  All notices under General Conditions (C)(1) and (2) must be sent:

(a)  to the address set forth in ITEM 7 of the Declarations:  Attention: Claim Department; or

(b) by electronic mail (email) to:  proclaimnewnotices@xlcatlin.com."

(6)  Section II General Conditions (E) of the General Terms and Conditions of the Policy is amended to read in its entirety as follows:

"(E)  All Loss payable under this Policy will be specifically excess of, and will not contribute with, any other valid and collectible insurance, including but not limited to any insurance under which there is a duty of defend, unless such other insurance is specifically excess of this Policy.  This Policy will not be subject to the terms of any other insurance policy."

(7)  Section II General Conditions (F)(1) of the General Terms & Conditions of this Policy is amended to read in its entirety as follows:

"(1)  Except for the nonpayment of premium, as set forth in (F)(2) below, the Named Insured has the exclusive right to cancel this Policy. Cancellation may be effected by mailing to the Insurer written notice when such cancellation shall be effective, provided the date of cancellation is not later than the Expiration Date set forth in ITEM 2 of the Declarations. In such event, the Insurer shall return to the Named Insured the gross pro rata unearned premium (minus brokerage commission). Return or tender of the unearned premium is not a condition of cancellation."

(8)  The coverage afforded under this Policy shall, subject to all of its terms, conditions and exclusions, extend to any domestic partner of any Insured Person, but only to the extent the domestic partner is a party to any Claim solely in their capacity as a domestic partner to such Insured Person and only for the purposes of any Claim seeking damages recoverable from community property, property jointly held by any such person and domestic partner, or property transferred from any such person to the domestic partner. Accordingly, Section II General Conditions (H) of the General Terms and Conditions of the Policy shall be deemed amended to effect the purpose and intent of this endorsement.

(9)  It is understood and agreed that, in the event of payment under the Policy, the Insurer will not be subrogated to any Insured's potential or actual rights of recovery in connection therewith against any Insured Person unless it is established, by final, non-appealable adjudication in the underlying Claim, admission of the Insured Person or otherwise, that such Insured Person committed any intentionally dishonest, fraudulent or criminal act or omission, willfully violated any statute, rule or law, or obtained any profit or remuneration to which such Insured Person was not legally entitled, and Section II General Conditions (I)(2) will be deemed to have been amended accordingly.

(10)  Section II General Conditions (K) of the General Terms and Conditions of the Policy is amended to read in its entirety as follows:

"(K)  WARRANTY

The Insured represents that the statements and particulars contained in the Application are true, accurate and complete, and agrees that this Policy is issued in reliance on the truth of that representation, and that such particulars and statements, which are deemed to be incorporated into and constitute a part of this Policy, are the basis of this Policy.  No knowledge or information possessed by any Insured will be imputed to any other Insured.  In the event that any of the particulars or statements in the Application are untrue, this Policy will be void with respect to any Insured who knew of such untruth."

Page 2 of 7

Manuscript 17927 07 15
© 2015 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

**Mercury 000102**

(11)    Upon the written request of an Insured, the Insurer will advance Defense Expenses within ninety (90) days of receipt of documentation of such, in excess of the applicable Retention, if any, before the disposition of the Claim for which this Policy provides coverage.  As a condition of the advancement of Defense Expenses, the Insurer may require a written undertaking, in a form satisfactory to the Insurer, which will guarantee the repayment of any Loss including Defense Expenses paid to or on behalf of the Insured if it is finally determined that the Loss incurred is not covered under this Policy.

(12)    Solely with respect to any Claim against an Insured Person as to which indemnification by the Adviser, Investment Fund or Company is not legally permissible or is not made solely by reason of financial insolvency, the Insurer may not void and/or rescind this Policy with respect to such Claim.

(13)    Coverage under this Policy shall extend anywhere in the world.

(14)    It is understood and agreed that no conduct of any Insured will be imputed to any other Insured to determine the application of any of the EXCLUSIONS in the Policy.

(15)    Section III Exclusion (I) of the Investment Advisers Professional Liability Coverage Part and Section III Exclusion (J) of the Investment Advisers Management Liability Coverage Part are deleted in their entirety.

(16)    No coverage shall be available under this Policy for any Claim for any actual or alleged violation of the Employee Retirement Income Security Act of 1974 (ERISA), as amended, or any regulation promulgated thereunder or any similar federal, state or local law or regulation; however this Exclusion will only apply to any Insured's pension, employee benefit or welfare plan.

(17)    Section IV Condition (A)(2)(c) of each Coverage Part is deleted in its entirety.

(18)    The term "Insured Person," as defined in Section II Definitions (C) of the Investment Advisers Professional Liability Coverage Part, is amended to read in its entirety as follows:

   "(C)    'Insured Person' means any past, present or future director, officer, partner, principal, member, trustee or employee of the Adviser and those persons serving in a functionally equivalent role for the Named Insured or any Subsidiary operating or incorporated outside the United States;"

(19)    Section III Exclusion (C) of the Investment Advisers Professional Liability Coverage Part is amended to read in its entirety as follows:

   "(C)    for any actual or alleged bodily injury, sickness, libel, slander, invasion of privacy, malicious use or abuse of process, malicious prosecution, wrongful entry or eviction, false arrest, false imprisonment, assault, battery, oral or written publication of defamatory or disparaging material, disease or death of any person, or damage or destruction of any tangible property including loss of use thereof; however, this EXCLUSION (C) will not apply to any:

      (1) actual or alleged libel, slander, oral or written publication of defamatory or disparaging material committed by an Insured in the performance of Professional Services; or

      (2)    Claim arising from damage to, destruction of, or loss of use of, client records in an Insured's possession;"

(20)    Section III Exclusion (F) of the Investment Advisers Professional Liability Coverage Part will not apply to any Claim to the extent that such Claim is brought by a bankruptcy trustee, examiner, receiver, conservator, rehabilitator, liquidator or comparable authority of the Adviser, or by any assignee of any of the foregoing.

(21)    Section III Exclusion (G) of the Investment Advisers Professional Liability Coverage Part is amended to read in its entirety as follows:

Page 3 of 7

Manuscript 17927 07 15
© 2015 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

**Mercury 000103**

"(G)    for any actual or alleged liability of the Adviser under any written contract or agreement (other than organizational, management, monitoring, consulting or advisory documents of any entity, including but not limited to a partnership agreement, limited partnership agreement, operating agreement, limited liability company agreement or other organizational, management, monitoring, consulting or advisory and/or subscription agreement); provided, that this EXCLUSION (G) will not apply to:

    (1)    any Claim against an Insured by a client or customer of the Adviser, if and to the extent that the Claim alleges a breach of contractual obligations in the rendering of or failure to render Professional Services; or

    (2)    liability which would attach to an Insured even in the absence of such contract or agreement;"

(22)    Section III Exclusions (L) of the Investment Advisers Professional Liability Coverage Part is deleted in its entirety.

(23)    Section III Exclusion (D) of the Investment Advisers Management Liability Coverage Part is amended to read in its entirety as follows:

"(D)    based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual, alleged or threatened discharge, dispersal, release, escape, seepage, transportation, emission, treatment, removal or disposal of pollutants, contaminants, or waste of any kind including but not limited to nuclear material or nuclear waste or any actual or alleged direction, request or voluntary decision to test for, abate, monitor, clean up, recycle, remove, recondition, reclaim, contain, treat, detoxify or neutralize pollutants, contaminants or waste of any kind including but not limited to nuclear material or nuclear waste. With respect to a Claim made under INSURING AGREEMENT (A) only, other than a Claim that is based upon, arising out of directly or indirectly resulting from, in consequence of, or in any way involving any actual, alleged or threatened discharge, dispersal, release, escape, seepage, transportation, emission, treatment, removal or disposal of nuclear material or nuclear waste, this EXCLUSION (D) will not apply to a Claim if a court of competent jurisdiction specifically determines the Adviser is not permitted to indemnify the Insured Persons;"

(24)    Section III Exclusion (F) of the Investment Advisers Management Liability Coverage Part, shall not apply to the extent that such Claim:

(a)    is brought and maintained by an Insured Person:

    (i)    who has not served as a director, officer, or member of the Board of Managers of the Adviser for at least two (2) years prior to the date such Claim is first made; and

    (ii)    who is acting independently of, and without the solicitation, assistance, participation or intervention of an Insured Person or the Adviser;

(b)    is brought by a creditors committee of the Adviser in the event such Adviser files for relief under Title 11 of the United States Code;

(c)    is brought by an Insured Person and brought and maintained in a jurisdiction outside the United States of America, including its territories and possessions; or

(d)    is brought by an employee of the Adviser pursuant to any federal or state whistleblower protection statute or any rule or regulation promulgated thereunder.

(25)    Section III Exclusion (G) of the Investment Advisers Management Liability Coverage Part is amended to read in its entirety as follows:

Page 4 of 7

Manuscript 17927 07 15
© 2015 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

**Mercury 000104**

"(G)    for any actual or alleged liability of the Adviser under any written contract or agreement (other than organizational, management, monitoring, consulting or advisory documents of any entity, including but not limited to a partnership agreement, limited partnership agreement, operating agreement, limited liability company agreement or other organizational, management, monitoring, consulting or advisory and/or subscription agreement); provided, that this EXCLUSION (G) will not apply to liability which would attach to an Insured even in the absence of such contract or agreement;"

(26)    In addition to the coverage otherwise provided under the Investment Advisers Management Liability Coverage Part, but still subject to the Insurer's maximum aggregate Limit of Liability as set forth in Items 3(a) and 3(g) of the Declarations, the Insurer shall pay on behalf of the Adviser all Investigation Costs resulting solely from any Shareholder Derivative Demand first made during the Policy Period or, if applicable, the Optional Extension Period, for a Wrongful Act committed or attempted, or allegedly committed or attempted, by any Insured Person.

(27)    For the purposes of paragraph (26) above, the following shall apply:

(a)    "Investigation Costs" mean reasonable fees and expenses of attorneys and experts retained by the Adviser, or by its board of directors or any committee thereof, that are incurred by the Adviser in the Adviser's investigation or evaluation of a Shareholder Derivative Demand.  Investigation Costs will not include the Adviser's overhead expenses or any salaries, wages, fees or benefits of its directors, officers or employees.

(b)    "Shareholder Derivative Demand" means a written demand, made by one or more of the shareholders of the Adviser upon the Adviser's board of directors, for the Adviser to bring a civil proceeding in a court of law against an Insured Person.

(c)    The Insurer's maximum aggregate limit of liability under this Policy for Investigation Costs shall be $250,000, which amount shall be part of, and not in addition to, the Insurer's maximum aggregate Limit of Liability under this Coverage Part as set forth in Item 3(a) of the Declarations and the Insurer's maximum aggregate Limit of Liability under this Policy as set forth in Item 3(g) of the Declarations.  Payment by the Insurer of Investigation Costs shall reduce the Limit of Liability.

(d)    The coverage provided under paragraph (26) above will be subject to the exclusions set forth in Section III of the Investment Advisers Management Liability Coverage Part and to any exclusions that may be set forth in other endorsements to this Policy, and any references in those exclusions to Loss and Claims shall be deemed to refer instead to Investigative Costs and Shareholder Derivative Demands, respectively.

(e)    No retention will apply to Investigation Costs payable under paragraph (26) above.

(f)    It shall be the duty of the Adviser to investigate and evaluate any Shareholder Derivative Demand.

(g)    For purposes of the coverage provided under paragraph (26) above, all references in Section II General Conditions (B) – (N) of the General Terms and Conditions of this Policy and Section IV Conditions of this Coverage Part to Loss and Defense Expenses shall be deemed to refer instead to Investigative Costs, and all references in Sections II General Conditions (B)- (N) and Section IV Conditions to Claims shall be deemed to refer instead to Shareholder Derivative Demands.

(28)    Section II Definition (E) of the Investment Advisers Management Liability Coverage Part is amended to read in its entirety as follows:

"(E)    'Non-Profit Entity' means any not-for-profit corporation."

(29)    Solely with respect to the Investment Advisers Management Liability Coverage Part:

Manuscript 17927 07 15
© 2015 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

**Mercury 000105**

(a)     The term "Loss," as defined in Section II Definitions (G)(2) of the General Terms and Conditions of the Policy, is amended to read in its entirety as follows:

"(2)     matters which are uninsurable under the law pursuant to which this Policy is construed; provided that the Insurer will not assert that the portion of any settlement in a Securities Claim arising from an initial or subsequent public offering of the Advisers or Insured Entity's securities constitutes uninsurable loss due to the alleged violations of Section 11 and/or 12 of the Securities Act of 1933 as amended (including alleged violations of Section 11 and/or 12 of the Securities Act of 1933 by a Controlling Person pursuant to Section 15 of the Securities Act of 1933)."

(b)     For the purposes of this Endorsement, "Securities Claim" means a Claim for any actual or alleged violation of the Securities Act of 1933.

(c)     Section III Exclusions (A)(2) of the Coverage Part(s) will not apply to allegations in a Securities Claim asserted against any Insured under Section 11 and/or 12 of the Securities Act of 1933 as amended arising out of an initial or subsequent public offering of the Adviser's or Insured Entity's securities (including alleged violations of Section 11 and/or 12 of the Securities Act of 1933 by a Controlling Person pursuant to Section 15 of the Securities Act of 1933).

(30)     Section III Exclusions (A) of each Coverage Part is amended to read in its entirety as follows:

"(A)     brought about or contributed to in fact by:

(1)     any intentionally dishonest, fraudulent or criminal act or omission; or

(2)     profit or remuneration gained by any Insured to which such is not legally entitled;

as determined by a final, non-appealable adjudication in the underlying action.  Each Insured agrees that, if the Insurer has no liability to an Insured for Loss as a result of a Claim by reason of this EXCLUSION (A), such Insured will repay the Insurer upon demand all Loss paid on behalf of such Insured in connection with such Claim;"

(31)     Section III Exclusions (B) of each Coverage Part of the Policy is amended to read in its entirety as follows:

"(B)     based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, event or Wrongful Act which, before the Inception Date of this Policy, was the subject or any notice given under any other Financial Services liability policy or similar policy of which this Policy is a renewal or replacement;"

(32)     Iit is understood and agreed that in the event that there is an inconsistency between a state amendatory endorsement attached to this Policy and any term or condition of this Policy modified by another endorsement attached to this Policy, then where permitted by law, the Insurer shall apply those terms and conditions of the endorsement which are more favorable to the Insured.

(33)     The Insurer shall not be entitled under any circumstances to rescind this Policy, other than for non-payment of premium.

(34)     It is understood and agreed that if Loss, including Defense Expenses, shall be payable under this Policy under any Coverage Part(s), then the Insurer shall, to the maximum extent practicable and subject at all times to the Insurer's maximum aggregate Limit of Liability as set forth in Item 3(g) of the Declarations, pay such Loss as follows:

(1)     first, the Insurer will pay Loss from such Claim made against the Insured Person(s) as to which indemnification by the Named Insured is not legally permissible or is not made solely by reason of the Named Insured's financial insolvency; then

Manuscript 17927 07 15
© 2015 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

**Mercury 000106**

(2)    second, the Insurer shall pay Loss from such Claim made against the Insured Person(s) as to which indemnification by the Named Insured is legally permissible, then

(3)    third, the Insurer shall pay that Loss, if any, which the Insurer may be liable to pay on behalf of any Insured which is not a natural person.

(35)   The term "Defense Expenses," as defined in Section II Definition (C) of the General Terms and Conditions of the Policy, is amended to include:

(a)    reasonable legal fees and costs incurred to facilitate an Insured's payment of amounts required to be paid pursuant to section 304 of the Sarbanes-Oxley Act of 2002 or section 954 of Dodd-Frank Wall Street Reform and Consumer Protection Act (but not the amounts repaid by the Insured pursuant to those sections); and

(b)    reasonable legal fees and costs incurred in the defense of Corporate Manslaughter Charges.

(36)   For the purposes of this endorsement, the term "Corporate Manslaughter Charges" means a formal criminal proceeding commenced in the United Kingdom against an Insured Person of a Company domiciled or incorporated in the United Kingdom for involuntary manslaughter (including constructive manslaughter or gross negligence manslaughter) in his or her capacity as a director or officer of such Company and directly related to the business of such Company.

(37)   The term "Claim," as defined in Section II Definition (B) of the General Terms and Conditions of the Policy, is amended to include Corporate Manslaughter Charges; provided however, that no coverage shall be available under this Policy for any Loss, other than Defense Expenses, incurred in connection with any Corporate Manslaughter Charges.

(38)   Section III Exclusions (A) of each Coverage Part of the Policy shall not apply to any Defense Expenses incurred in connection with any Corporate Manslaughter Charges.

(39)   Notwithstanding Section I General Definition (G)(3) of the General Terms & Conditions of this Policy, the term "Loss," as defined in Section I General Definition (G), will include civil penalties assessed against an Insured pursuant to Section 2(g)(2) of the Foreign Corrupt Practices Act of 1977 (15 U.S.C. 78dd-2(g)(2)).

All other terms, conditions and limitations of this Policy shall remain unchanged.

Manuscript 17927 07 15
© 2015 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

**Mercury 000107**

FD 80 405 08 11

| | |
|---|---|
| Endorsement No.: 7 | Effective: December 14, 2020 |
| Named Insured: Mercury Capital Advisors Group LP | 12:01 A.M. Standard Time |
| Policy No.: ELU172207-20 | Insurer: XL Specialty Insurance Company |
| Coverage Part: General Terms and Conditions | |

# AMEND DEFINITION OF "CLAIM"

In consideration of the premium charged:

(1)    Section I. GENERAL DEFINITIONS (B) of the General Terms and Conditions is amended to read in its entirety as follows:

"(B)    'Claim' means:

(1)    any written demand for monetary or non-monetary relief;

(2)    any civil proceeding in a court of law or equity, or arbitration;

(3)    any criminal proceeding which is commenced by the return of an indictment, information or similar document;

(4)    a target letter identifying an Insured Person as the subject of a criminal investigation;

(5)    a subpoena issued to an Insured;

(6)    a Wells Notice from the Securities and Exchange Commission or similar state or foreign governmental authority;

(7)    a formal administrative or regulatory proceeding against, or formal investigation of, an Insured which is commenced by the filing or issuance of a notice of charges, formal investigative order or similar document identifying in writing such Insured as a person or entity against whom or which a proceeding as described within or above may be commenced, including any proceeding before the Equal Employment Opportunity Commission or any similar federal, state or local governmental body;

(8)    a written request or agreement for an Insured to toll any applicable statute of limitations;

(9)    any official written request for Extradition of any Insured Person or the execution of a warrant for the arrest of any Insured Person where such execution is an element of Extradition; and

(10)    with respect only to an Insured Person, any informal investigation or inquiry by, or request to appear for an interview from, any federal, state, local or foreign law enforcement or governmental authority or securities exchange; provided, however, that with respect to any Claim as defined in this subparagraph (10), such Claim will be deemed to have been first made only when such Claim is reported in writing to the Insurer and, further, it is understood and agreed that such Claim need not allege any Wrongful Act on the part of such Insured Person in order for the coverage otherwise afforded under this Policy to attach, it being further understood and agreed that the Insuring Agreements of the Coverage Parts comprising this Policy will be deemed to have been amended accordingly."

(2)    Solely for the purposes of this endorsement, the term "Extradition" means any formal process by which an Insured Person located in any country is surrendered to any other country for trial or otherwise to answer any criminal accusation.

© 2011 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

**Mercury 000108**

All other terms, conditions and limitations of this Policy shall remain unchanged.

© 2011 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

*Mercury 000109*

| | |
|---|---|
| **Endorsement No.: 8** | **Effective: December 14, 2020** |
| **Named Insured: Mercury Capital Advisors Group LP** | **12:01 A.M. Standard Time** |
| **Policy No.: ELU172207-20** | **Insurer: XL Specialty Insurance Company** |

# AMEND DEFINITION OF PROFESSIONAL SERVICES ENDORSEMENT

In consideration of the premium charged, the term "Professional Services," as defined in Section II Definition (D) of the Coverage Part is amended to read in its entirety as follows:

"(D)    'Professional Services' means:

    (1)    financial, economic or investment advice given or investment management services, including but not limited to placement agent services, performed for others for consideration by the Adviser or on behalf of the Adviser by any person or entity;

    (2)    the provision of computer and Internet services, administrative services, and publications prepared or written by any Insured, provided such services are performed in connection with the Adviser's financial or investment operations; or

    (3)    the selection, oversight and direction by any Insured of any person or entity performing Professional Services on behalf of the Adviser.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Page 1 of 1

Manuscript 16442 02 14
© 2014 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

**Mercury 000110**

**FD 80 114 11 04**

| | |
|---|---|
| **Endorsement No.: 9** | **Effective: December 14, 2020** |
| **Named Insured: Mercury Capital Advisors Group LP** | **12:01 A.M. Standard Time** |
| **Policy No.: ELU172207-20** | **Insurer: XL Specialty Insurance Company** |
| **Coverage Part:    Investment Fund Management and Professional Liability** | |

# ADVISORY BOARD MEMBER ENDORSEMENT

In consideration of the premium charged:

(1)    For the purposes of this endorsement, the term "Advisory Board Member" means an individual serving on an advisory board or advisory committee of an Investment Fund, which advisory board or advisory committee was created pursuant to a limited partnership agreement or equivalent documents of such Investment Fund.

(2)    The term "Insured Person," as defined in Section II Definitions of the Coverage Part, is amended to include any Advisory Board Member.

All other terms, conditions and limitations of this Policy shall remain unchanged.

*Mercury 000111*

FD 80 205 12 06

**Endorsement No.: 10**
**Named Insured: Mercury Capital Advisors Group LP**
**Policy No.: ELU172207-20**
**Coverage Part: Investment Advisers Management Liability**

**Effective: December 14, 2020**
**12:01 A.M. Standard Time**

**Insurer: XL Specialty Insurance Company**

# AMEND INSURED PERSON ENDORSEMENT

In consideration of the premium charged, the term "Insured Person," as defined in Section II Definitions (D)(1) of the Coverage Part, is amended to include any employee of the Adviser.

All other terms, conditions and limitations of this Policy shall remain unchanged.

FD 80 205 12 06

Page 1 of 1

*Mercury 000112*

**FD 80 425 12 11**

**Endorsement No.: 11**
**Named Insured: Mercury Capital Advisors Group LP**
**Policy No.: ELU172207-20**
**Coverage Part: Employment Practices Liability**

**Effective: December 14, 2020**
**12:01 A.M. Standard Time**

**Insurer: XL Specialty Insurance Company**

# AMEND WRONGFUL ACT DEFINITION ENDORSEMENT

In consideration of the premium charged, the term "Wrongful Act," as defined in Section II Definition (F) of the Coverage Part, shall include any actual or alleged negligent training and supervision by the Company or by any Insured Person in his or her capacity as such.

All other terms, conditions and limitations of this Policy shall remain unchanged.

© 2011 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

*Mercury 000113*

FD 80 142 05 05

| | |
|---|---|
| **Endorsement No.: 12** | **Effective: December 14, 2020** |
| **Named Insured: Mercury Capital Advisors Group LP** | **12:01 A.M. Standard Time** |
| **Policy No.: ELU172207-20** | **Insurer: XL Specialty Insurance Company** |
| **Coverage Part: General Terms and Conditions** | |

# GENERAL PARTNER LIABILITY ENDORSEMENT

In consideration of the premium charged, in addition to the other Coverage Parts, but still subject to the maximum aggregate Limit of Liability set forth in Item 3(g) of the Declarations applicable to all Loss resulting from all Claims under all Coverage Parts, including this endorsement, the following is added to the Policy:

I.    INSURING AGREEMENTS

    (A)    Insurer shall pay on behalf of the General Partners Loss resulting from Claims first made against the General Partners during the Policy Period or, if applicable, the Optional Extension Period, for Wrongful Acts, except for Loss which the Limited Partnership is permitted or required to pay on behalf of the General Partners as indemnification.

    (B)    The Insurer shall pay on behalf of the Limited Partnership Loss which the Limited Partnership is required or permitted to pay as indemnification to any of the Insureds resulting from Claims first made against the General Partners during the Policy Period or, if applicable, the Optional Extension Period, for Wrongful Acts.

    (C)    The Insurer shall pay on behalf of the Limited Partnership Loss resulting solely from Securities Claims first made against the Limited Partnership during the Policy Period or, if applicable, the Optional Extension Period, for Limited Partnership Wrongful Acts.

II.    DEFINITIONS

    (A)    "Change In Control" means:

        (1)    the merger or acquisition of the Limited Partnership, or of all or substantially all of its assets by another individual or entity such that the Limited Partnership is not the surviving entity; or

        (2)    the appointment of a Receiver, Conservator, Liquidator, Trustee, Rehabilitator, or any comparable authority, with respect to the Limited Partnership; or

        (3)    the withdrawal or resignation of all or a majority of the General Partners or the replacement or substitution of all or a majority of the General Partners; or

        (4)    with respect to any General Partner of a Limited Partnership which is a corporation, the acquisition of such General Partner or of all or substantially all of its assets by another entity, or the merger or consolidation of the General Partner into or with another entity in which the General Partner is not the surviving entity, or the withdrawal, resignation, replacement or substitution of more than fifty percent (50%) of the directors or officers of such General Partner.

    (B)    "Claim" as defined in GENERAL CONDITIONS (B) of the General Terms and Conditions of this Policy, shall be deemed to include, for the purposes of this Endorsement, a formal civil, criminal, or administrative regulatory proceeding or formal investigation of a General Partner or the Limited Partnership (but with respect to the Limited Partnership only for a Limited Partnership Wrongful Act) which is commenced by the filing or issuance of a notice of charges, formal investigative order or similar document identifying in writing such General Partner or Limited Partnership as a person or entity against whom a proceeding as described in (B)(2) or (3) of the General Terms and Conditions of this Policy.

FD 80 142 05 05

*Mercury 000114*

(C) "General Partner" means any general partner of the Limited Partnership, whether such general partner is an individual, corporation or other entity, and:

  (1) any past, present or future director or officer of a corporate General Partner but only while such person is acting on behalf of such corporate General Partner with respect to its activities in a fiduciary capacity as a General Partner of the Limited Partnership;

  (2) any natural person identified in (G)(1) above who, at the specific written request of the Limited Partnership, is serving as a director, officer, trustee, regent or governor of a Non-Profit Entity;

  (3) the lawful spouse of any person set forth in the above provisions of this definition, but only to the extent the spouse is a party to any Claim solely in his or her capacity as a spouse of such persons and only for the purposes of any Claim seeking damages recoverable from marital community property, property jointly held by any such person and spouse, or property transferred from any such person to the spouse.

  In the event of the death, incapacity or bankruptcy of an individual identified in (G)(1), (2) or (3) above, any Claim against the estate, heirs, legal representatives or assigns of such individual for a Wrongful of such individual will be deemed to be a Claim against such individual.

(D) "Insured" means the General Partners and the Limited Partnership. Insured also means and any past, present or future employee of the Limited Partnership to the extent any Claim is a Securities Claim.

(E) "Limited Partnership" means the Limited Partnership(s) scheduled in Endorsement No. 1 of the Policy and any Subsidiary created or acquired on or before the Inception Date set forth in ITEM 2 of the Declarations or during the Policy Period, subject to Condition (A) of this Endorsement.

(F) "Limited Partnership Wrongful Act" means any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty by the Limited Partnership in connection with a Securities Claim.

(G) "Non-Profit Entity" means a corporation or organization other than the Limited Partnership, which is exempt from taxation under Section 501(c)(3), (4) and (10) of the Internal Revenue Code as amended or any rule or regulation promulgated thereunder.

(H) "Securities Claim" means a Claim made against an Insured for:

  (1) any actual or alleged violation of the Securities Act of 1933 as amended, the Securities Exchange Act of 1934 as amended, any similar federal or state statute or any rules or regulations promulgated thereunder; or

  (2) any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty arising from or in connection with the purchase or sale of, or offer to purchase or sell any securities issued by the Limited Partnership, whether such purchase, sale or offer involves a transaction with the Limited Partnership or occurs in the open market.

(I) "Wrongful Act" means any actual or alleged act, error, omission, misstatement, misleading statement, neglect, or breach of duty by any General Partner while acting in his or her capacity as a:

  (1) General Partner of the Limited Partnership or a person serving in a functionally equivalent role for any Subsidiary; or

  (2) General Partner of the Limited Partnership who at the specific written request of the Limited Partnership is serving as a director, officer, trustee, regent or governor of a Non-Profit Entity.

*Mercury 000115*

## III.  EXCLUSIONS

The Insurer shall not be liable to make any payment for Loss in connection with any Claim made against a General Partner, or with respect to INSURING AGREEMENT (C), the Limited Partnership:

(A)    for any actual or alleged bodily injury, sickness, mental anguish, emotional distress, libel, slander, oral or written publication of defamatory or disparaging material, disease or death of any person, or damage or destruction of any tangible property including loss of use thereof;

(B)    for any actual, alleged or threatened discharge, dispersal, release, escape,  seepage, transportation, emission, treatment, removal or disposal of pollutants, contaminants, or waste of any kind including but not limited to nuclear material or nuclear waste or any actual or alleged direction, request or voluntary decision to test for, abate, monitor, clean up, recycle, remove, recondition, reclaim, contain, treat, detoxify or neutralize pollutants, contaminants or waste of any kind including but not limited to nuclear material or nuclear waste.  This EXCLUSION (B) will not apply with respect to a Claim made under INSURING AGREEMENT (A) only, if a court of competent jurisdiction specifically determines the Limited Partnership is not permitted to indemnify the General Partner;

NOTE:  EXCLUSIONS (A) and (B) above will not apply with respect to a Securities Claim brought by a security holder of the Limited Partnership, or a derivative action brought by or on behalf of, or in the name or right of, the Limited Partnership, and brought and maintained independently of, and without the solicitation, assistance, participation or intervention of, an Insured.

(C)    based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged violation of the Employee Retirement Income Security Act of 1974 (ERISA) as amended or any regulations promulgated thereunder or any similar law, federal, state or local law or regulation;

(D)    based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any prior and/or pending litigation or administrative or regulatory proceeding or arbitration which was brought prior to the Pending and Prior Litigation Date set forth in ITEM 6 of the Declarations or any fact, circumstance, situation, transaction, event or Wrongful Act or Limited Partnership Wrongful Act underlying or alleged therein;

(E)    based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, event or Wrongful Act or Limited Partnership Wrongful Act which, before the Inception Date of this Policy, was the subject of any notice given under any other Management Liability policy, General Partners Liability policy or any policy of which this policy is a renewal or replacement or which it may succeed in time;

(F)    brought about or contributed to in fact by any:

(1)    intentionally dishonest, fraudulent or criminal act or omission or any willful violation of any statute, rule or law; or

(2)    profit or remuneration gained by any Insured to which such Insured is not legally entitled;

as determined by a final adjudication in the underlying action or in a separate action or proceeding;

(G)    by, on behalf of, at the direction of or in the name or right of a General Partner or the Limited Partnership, except and to the extent such Claim:

(1)    is brought derivatively by a security holder or limited partner of the Limited Partnership who, when such Claim is made and maintained, is acting independently of, and without the solicitation, assistance, participation or intervention of a General Partner or the Limited Partnership;

*Mercury 000116*

(2)    is in the form of a crossclaim, third party claim or other claim for contribution or indemnity by an Insured which is part of or results directly from a Claim which is not otherwise excluded by the terms of this Policy; or

(3)    is brought by the Bankruptcy Trustee or Examiner of the Limited Partnership or any assignee of such Trustee or Examiner, or any Receiver, Conservator, Rehabilitator, or Liquidator or comparable authority of the Limited Partnership;

(H)    by, on behalf of, at the direction of or in the name or right of any Non-Profit Entity against a General Partner for a Wrongful Act while acting in his or her capacity as a director, officer, trustee, regent or governor of such, or persons occupying elected or appointed positions having fiduciary, supervisory or managerial duties and responsibilities comparable to those of a General Partner of the Limited Partnership, regardless of the name or title by which such position is designated; or

(I)    based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving an General Partner acting in his or her capacity as a General Partner of any entity other than the Limited Partnership or Non-Profit Entity.

No conduct of any Insured will be imputed to any other Insured (other than the Limited Partnership) to determine the application of any of the above EXCLUSIONS.

## IV.  LIMIT OF LIABILITY, INDEMNIFICATION AND RETENTIONS

(A)    The Insurer's maximum aggregate limit of liability under this Endorsement for all Claims for Wrongful Acts will be $3,000,000, which amount is a part of, and not in addition to, the Insurer's maximum aggregate Limit of Liability set forth in Item 3(g) of the Declarations.

(B)    The Insurer shall pay under this Endorsement the amount of Loss for any Claim for Wrongful Acts in excess of a retention of $300,000 for each such Claim, which amount will be deemed to be the retention set forth in Item 4 of the Declarations with respect to such Claim.

(C)    With respect to the Limited Partnership's indemnification of its General Partners, the partnership agreement, certificate of incorporation, charter, by-laws, articles of association, or other organizational documents of the Limited Partnership, each Subsidiary and each Non-Profit Entity, will be deemed to provide indemnification to the General Partners to the fullest extent permitted by law.

## V.  GENERAL CONDITIONS

(A)    MERGERS AND ACQUISITIONS (CHANGES IN EXPOSURE OR CONTROL)

(1)    If during the Policy Period, the Limited Partnership acquires any assets, acquires a Subsidiary, or acquires any entity by merger, consolidation or otherwise, or assumes any liability of another entity, coverage shall be provided for any Loss involving a Claim for a Wrongful Act, Limited Partnership Wrongful Act occurring after the consummation of the transaction.

(2)    If, however, by reason of the transaction (or series of transactions) described in (D)(1) above, the entity, assets, Subsidiary or liabilities so acquired or so assumed exceed thirty five percent (35%) of the total assets or liabilities of the Limited Partnership, as represented in the Limited Partnership's most recent audited consolidated financial statements, coverage under this Policy shall be provided for a period of ninety (90) days for any Loss involving a Claim for a Wrongful Act, Limited Partnership Wrongful Act that occurred after the transaction has been consummated.  Coverage beyond the ninety (90) day period will be provided only if:

(a)    the Insurer receives written notice containing full details of the transaction(s); and

*Mercury 000117*

(b)    the Insurer at its sole discretion agrees to provide such additional coverage upon such terms, conditions, limitations, and additional premium that it deems appropriate.

(3)    With respect to the acquisition, assumption, merger, consolidation or otherwise of any entity, asset, Subsidiary or liability as described in (D)(1) and (2) above, there will be no coverage available under this Policy for Claims made against the acquired, assumed, merged, or consolidated entity, asset, Subsidiary, liability, or General Partner for a Wrongful Act, Limited Partnership Wrongful Act committed any time during which such entity, asset, liability or Subsidiary is not an Insured.

(4)    If during the Policy Period any entity ceases to be a Subsidiary, the coverage provided under this Policy shall continue to apply to the General Partners who, because of their service with such Subsidiary, were covered under this Policy but only with respect to a Claim for a Wrongful Act, Limited Partnership Wrongful Act that occurred or allegedly occurred prior to the time such Subsidiary ceased to be a Subsidiary of the Limited Partnership.

(5)    If, during the Policy Period, there is a Change In Control, the coverage provided under this Policy shall continue to apply but only with respect to a Claim against an Insured for a Wrongful Act, Limited Partnership Wrongful Act committed or allegedly committed up to the time of the Change In Control; and

(a)    coverage will cease with respect to any Claim for a Wrongful Act, Limited Partnership Wrongful Act committed subsequent to the Change In Control; and

(b)    the entire premium for the Policy will be deemed to be fully earned immediately upon the consummation of a Change In Control.

(B)    SERVICE IN CONNECTION WITH NON-PROFIT ENTITIES

(1)    All coverage under this Policy for Loss from Claims made against the General Partners while acting in their capacity as a director, officer, trustee, regent or governor of a Non-Profit Entity will be specifically excess of and will not contribute with, any other insurance or indemnification available to such General Partner from such Non-Profit Entity by reason of their service as such.

(2)    The certificate of incorporation, charter, articles of association or other organizational documents of each Non-Profit Entity, including bylaws and resolutions, will be deemed to provide indemnification to the General Partners to the fullest extent permitted by law.

(3)    If, during the Policy Period, a General Partner discontinues his or her service with an Non-Profit Entity, coverage under this Endorsement will continue in full force and effect for the General Partner in connection with their service with such Non-Profit Entity, but only with respect to Claims for Wrongful Acts committed before the time the General Partner discontinued serving in such capacity.

All other terms, conditions and limitations of this Policy shall remain unchanged.

*Mercury 000118*

FD 80 06 09 00

| | |
|---|---|
| Endorsement No.: 13 | Effective: December 14, 2020 |
| Named Insured: Mercury Capital Advisors Group LP | 12:01 A.M. Standard Time |
| Policy No.: ELU172207-20 | Insurer: XL Specialty Insurance Company |
| Coverage Part: Investment Fund Management and Professional Liability | |

# SCHEDULE OF INVESTMENT FUND(S)

In consideration of the premium charged, the term "Investment Fund" shall be deemed to include the following Investment Fund(s):

<u>INVESTMENT FUND(S)</u>

Mercury 400 Capital Credit Opportunities Fund

Mercury Calera Capital Partners V Fund

Mercury DAG Special Opportunities Fund

Mercury DSC Thomson Reuters VC/PE Index Partners Fund

Mercury Imperial Companies Fund

Mercury Invictus Opportunities Fund

Mercury Lion Capital Fund IV

Mercury Rialto Real Estate Fund III

Mercury Walton Street Real Estate Fund VIII

Mercury Cube Infrastructure Fund II

Mercury Beachhead Equity Hedge Dynamic Beta Fund

Mercury DSC PE-VC Index Fund

Mercury Efficient US Fund

Mercury MidOcean TEF

Mercury Mariner Partners Fund

Mercury Bain Capital Double Impact Fund

Mercury Teewinot Vista Fund

Mercury Pembrook Cummunity Investors LLC Fund

Mercury Windham Risk Premium Fund LP

Mercury Solariant Renewable Energy Fund I

Mercury Highland Argentina Regional Opportunity Fund

Mercury Wilshire Private Income Fund

Mercury Wilshire Private Markets Private Income Fund

Mercury Sandalwood Fund

All other terms, conditions and limitations of this Policy shall remain unchanged.

*Mercury 000119*

# GENERAL TERMS AND CONDITIONS

**THIS IS A CLAIMS MADE POLICY WITH DEFENSE EXPENSES INCLUDED IN THE LIMIT OF LIABILITY. PLEASE READ AND REVIEW THE POLICY CAREFULLY. THESE GENERAL TERMS AND CONDITIONS APPLY TO ALL APPLICABLE COVERAGE PARTS. IF THERE IS A CONFLICT BETWEEN THESE GENERAL TERMS AND CONDITIONS AND THE TERMS AND CONDITIONS OF ANY APPLICABLE COVERAGE PART, THE TERMS AND CONDITIONS OF THE APPLICABLE COVERAGE PART SHALL APPLY. THE PROVISIONS OF EACH COVERAGE PART SHALL APPLY ONLY TO THAT PARTICULAR COVERAGE PART AND SHALL IN NO WAY BE CONSTRUED TO APPLY TO ANY OTHER COVERAGE PART OF THIS POLICY.**

**In consideration of the payment of the premium, and in reliance on all statements made and information furnished to the Company identified in the Declarations (hereinafter the Insurer), including the Application, and subject to all of the terms, conditions and limitations of all of the provisions of this Policy, the Insurer and the Insureds agree as follows:**

I.      **GENERAL DEFINITIONS**

(A)     "**Application**" means:

(1)     the **Application** attached to and forming part of this Policy; and

(2)     any materials submitted therewith, which shall be retained on file by the Insurer and shall be deemed to be physically attached to this Policy.

(B)     "**Claim**" means:

(1)     any written notice received by an **Insured** that any person or entity intends to hold any **Insured** responsible for a **Wrongful Act**;

(2)     any civil proceeding in a court of law or equity, or arbitration; or

(3)     any criminal proceeding which is commenced by the return of an indictment.

(C)     "**Defense Expenses**" means reasonable legal fees and expenses incurred in the defense of any **Claim** including the premium for an appeal bond, attachment bond or similar bond but will not include applying for or furnishing such bond. **Defense Expenses** will not include any **Insured's** overhead expenses or any salaries, wages, fees, or benefits of its directors, officers, trustees or employees.

(D)     "**Insured**" shall have the meaning given to that term in each Coverage Part attached hereto.

(E)     "**Insured Person**" shall have the meaning given to that term in each Coverage Part attached hereto.

(F)     "**Interrelated Wrongful Acts**" means **Wrongful Acts** which are based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any of the same or related or series of related facts, circumstances, situations, transactions or events.

(G)     "**Loss**" means damages, judgments, settlements or other amounts (including punitive or exemplary damages where insurable by law) in excess of the Retention that the **Insured** is obligated to pay, and **Defense Expenses**, whether incurred by the Insurer or the **Insured**, in excess of the Retention. **Loss** will not include:

(1)     the multiplied portion of any damage award;

*Mercury 000120*

**FINANCIAL SERVICES LIABILITY POLICY**
**FD 71 04 09 00**

(2)    matters which are uninsurable under the law pursuant to which this Policy is construed; and

(3)    fines, penalties or taxes imposed by law.

**NOTE**: With respect to judgments in which punitive damages are awarded, the coverage provided by this Policy shall apply to the broadest extent permitted by law.  If, based on the written opinion of counsel for the **Insured**, punitive damages are insurable under applicable law the Insurer will not dispute the written opinion of counsel for the **Insured**.

(H)    "**Named Insured**" means the entity named in ITEM 1 of the Declarations.

(I)    "**Policy Period**" means the period from the Inception Date to the Expiration Date set forth in ITEM 2 of the Declarations or to any earlier cancellation date.

(J)    "**Subsidiary**" means any entity during any time in which the **Named Insured** owns, directly or through one or more **Subsidiary(ies)**, more than fifty percent (50%) of the outstanding securities representing the present right to vote for the election of such entity's directors.

(K)    "**Wrongful Act**" shall have the meaning given to that term in each Coverage Part attached hereto.

## II.    GENERAL CONDITIONS

(A)    **LIMIT OF LIABILITY, RETENTIONS AND INDEMNIFICATION**

(1)    The amounts set forth in ITEM 3(a) – 3(f) of the Declarations as the Maximum Aggregate Limit of Liability for each Coverage Part shall be the Maximum Aggregate Limit of Liability of the Insurer under such Coverage Part for all **Loss**, including **Defense Expenses**, from all **Claims** made or deemed made under such Coverage Part during the **Policy Period**.  Each such amount shall be part of, and not in addition to, the amount set forth in ITEM 3(g) of the Declarations as the Maximum Aggregate Limit of Liability under the Policy for all **Loss** from all **Claims** for which this Policy provides coverage.

(2)    **Defense Expenses** incurred by the Insurer or by the **Insured** in defense of a **Claim** will be part of and not in addition to the Insurer's Limits of Liability, and payment of **Defense Expenses** by the Insurer will reduce and may exhaust the Limits of Liability.

(3)    If coverage is available for a **Claim** under more than one Coverage Part, the maximum applicable Limit of Liability for such **Claim** shall be the largest applicable remaining Limit of Liability under only one of the applicable Coverage Parts.

(4)    With respect to a **Claim** under any Coverage Part attached hereto, the Insurer shall only pay **Loss** which is in excess of the amount set forth in ITEM 4 of the Declarations as the Retention applicable to each **Claim** under the applicable Coverage Part.  If different Retentions are applicable to different parts of any **Loss** under this Policy, the applicable Retention will be applied separately to each part of such **Loss**, and the sum of such Retentions will not exceed the largest applicable Retention set forth in ITEM 4 of the Declarations.

(5)    The certificate of incorporation, charter, articles of association or other organizational documents of any **Insured** that is organized as a Corporation, Limited Liability Company, Limited Partnership, Investment Company or Trust, including bylaws and resolutions, will be deemed to provide indemnification to the **Insured Persons** to the fullest extent permitted by law.

(B)    **DEFENSE, SETTLEMENT AND ALLOCATION OF LOSS**

(1)    It shall be the duty of the **Insureds** to defend any **Claim** under this Policy.

**FINANCIAL SERVICES LIABILITY POLICY**
**FD 71 04 09 00**

(2)    No **Insured** may incur any **Defense Expenses** or admit any liability for, make any settlement offer with respect to, or settle any **Claim** without the Insurer's consent, such consent not to be unreasonably withheld.  The Insurer will have the right to make investigations and conduct negotiations and, with the consent of the **Insured**, enter into such settlement of any **Claim** as the Insurer deems appropriate.

(3)    Notwithstanding GENERAL CONDITIONS (B)(2) above, the **Insured** may settle any **Claim** without the Insurer's prior written consent if the total **Loss**, including **Defense Expenses**, resulting from such **Claim** does not exceed fifty percent (50%) of the amount of the applicable Retention set forth in ITEM 4 of the Declarations; provided, however, the **Insured** must promptly advise the Insurer of any such settlement and provide any information in connection therewith that the Insurer may request.  If the **Insured** reasonably expects that the total **Loss**, including **Defense Expenses**, resulting from any **Claim** will exceed fifty percent (50%) of the applicable retention, the Insurer shall have the right to participate in any settlement negotiations, and the **Insured** agrees to obtain the consent of the Insurer prior to making any settlement offer or responding to any settlement demand.

(4)    If both **Loss** covered by this Policy and loss not covered by this Policy are incurred, either because a **Claim** made against the **Insured** contains both covered and uncovered matters, or because a **Claim** is made against both the **Insured** and others not insured under this Policy, the **Insured** and the Insurer will use their best efforts to determine a fair and appropriate allocation of **Loss** between that portion of **Loss** that is covered under this Policy and that portion of loss that is not covered under this Policy.  Additionally, the **Insured** and the Insurer agree that in determining a fair and appropriate allocation of **Loss**, the parties will take into account the relative legal and financial exposures of, and relative benefits obtained in connection with the defense and/or settlement of the **Claim** by, the **Insured** and others.

(5)    In the event that an agreement cannot be reached between the Insurer and the **Insured** as to an allocation of **Loss**, as described in GENERAL CONDITIONS (B)(4), the Insurer shall advance that portion of **Loss** which the **Insured** and the Insurer agree is not in dispute until a final amount is agreed upon or determined pursuant to the provisions of this Policy and applicable law.

(C)    **NOTICE**

(1)    As a condition precedent to any right to payment under this Policy, the **Insured** shall give written notice to the Insurer of any **Claim** as soon as practicable after it is first made.

(2)    If, during the **Policy Period**, the **Insured** first becomes aware of a specific **Wrongful Act**, and if, during the **Policy Period**, the **Insured**:

(a)    provides the Insurer with written notice of the specific **Wrongful Act**, the consequences which have resulted or may result therefrom (including but not limited to actual or potential damages), the identities of the potential claimants, and the circumstances by which the **Insured** first became aware of such **Wrongful Act**; and

(b)    requests coverage under this Policy for any subsequently resulting **Claim** for such **Wrongful Act**;

then any **Claim** subsequently made arising out of such **Wrongful Act** will be treated as if it had been first made during the **Policy Period**.

(3)    All notices under GENERAL CONDITIONS (C)(1) and (2) must be sent by certified mail or the equivalent to the address set forth in ITEM 7 of the Declarations; Attention: Claim Department.

(D)    **INTERRELATED CLAIMS**

*Mercury 000122*

**FINANCIAL SERVICES LIABILITY POLICY**
**FD 71 04 09 00**

All **Claims** arising from **Interrelated Wrongful Acts** shall be deemed to constitute a single **Claim** and shall be deemed to have been made at the earliest time at which the earliest such **Claim** is made or deemed to have been made pursuant to GENERAL CONDITIONS (C)(1) or, if applicable, GENERAL CONDITIONS (C)(2).

(E)    **OTHER INSURANCE**

All **Loss** payable under this Policy will be specifically excess of, and will not contribute with, any other insurance, including but not limited to any insurance under which there is a duty to defend, unless such other insurance is specifically excess of this Policy. This Policy will not be subject to the terms of any other insurance policy.

(F)    **CANCELLATION AND RENEWAL OF COVERAGE**

(1)    Except for the nonpayment of premium, as set forth in (F)(2) below, the **Named Insured** has the exclusive right to cancel this Policy. Cancellation may be effected by mailing to the Insurer written notice when such cancellation shall be effective, provided the date of cancellation is not later than the Policy Expiration Date set forth in ITEM 2 of the Declarations. In such event, the Insurer shall retain the customary short rate portion of the earned premium. Return or tender of the unearned premium is not a condition of cancellation.

(2)    The Insurer may only cancel this Policy for nonpayment of premium. The Insurer will provide not less than ten (10) days written notice stating when the Policy will be cancelled. Notice of cancellation will be sent to the **Named Insured** and the agent of record for the **Insured**, if applicable.

(3)    The Insurer is under no obligation to renew this Policy upon its expiration. Once the Insurer chooses to non-renew this Policy, the Insurer will deliver or mail to the **Named Insured** written notice stating such at least sixty (60) days before the Policy Expiration Date set forth in ITEM 2 of the Declarations.

(G)    **OPTIONAL EXTENSION PERIOD**

(1)    If either the **Named Insured** or the Insurer does not renew this Policy, the **Named Insured** shall have the right, upon payment of an additional premium set forth in ITEM 5 of the Declarations, to a one or two year extension of the coverage provided by this Policy with respect only to any **Claim** first made during the one or two year period of time after the Policy Expiration Date, but only with respect to **Wrongful Acts** occurring prior to the Policy Expiration Date.

(2)    As a condition precedent to the right to purchase the Optional Extension Period the total premium for this Policy must have been paid in full. The right of the **Named Insured** to purchase the Optional Extension Period will be immediately terminated if the Insurer does not receive written notice by the **Named Insured** advising it wishes to purchase the Optional Extension Period together with full payment of the premium for the Optional Extension Period within thirty (30) days after the Policy Expiration Date.

(3)    If the **Named Insured** elects to purchase the Optional Extension Period as set forth in (G)(1) and (2) above, the entire premium for the Optional Extension Period will be deemed to be fully earned at the Inception Date of the Optional Extension Period.

(4)    The purchase of the Optional Extension Period will not in any way increase the Limits of Liability set forth in ITEM 3 of the Declarations, and the Limits of Liability with respect to **Claims** made during the Optional Extension Period shall be part of and not in addition to all applicable Limits of Liability for **Claims** made during the **Policy Period**.

(H)    **SPOUSES, ESTATES AND LEGAL REPRESENTATIVES OF INSURED PERSONS**

The coverage afforded under this Policy shall, subject to all of its terms, conditions and exclusions, extend to:

**FINANCIAL SERVICES LIABILITY POLICY**
**FD 71 04 09 00**

(1)    the lawful spouse of any **Insured Person**; provided however, that this GENERAL CONDITION (H)(1) will apply only:

    (a)    to the extent that the spouse is a party to any **Claim** solely in his or her capacity as a spouse of such **Insured Person**; and

    (b)    for the purposes of any **Claim** seeking damages recoverable from marital community property, property jointly held by such **Insured Person** and spouse, or property transferred from such **Insured Person** to the spouse.

(2)    the estate, heirs, legal representatives or assigns of any **Insured Person** or assigns of any **Insured Person** who is deceased, or against the legal representatives or assigns of any **Insured Person** who is incompetent, insolvent or bankrupt.

(I)    **ASSISTANCE, COOPERATION AND SUBROGATION**

(1)    The **Insured** agrees to provide the Insurer with all information, assistance and cooperation that the Insurer may reasonably request, and further agrees that it will do nothing which in any way increases the Insurer's exposure under this Policy or in any way prejudices the Insurer's potential or actual rights of recovery.

(2)    In the event of any payment under this Policy, the Insurer shall be subrogated to all of the potential or actual rights of recovery of the **Insured**. The **Insured** shall execute all papers required and will do everything necessary to secure such rights including but not limited to the execution of such documents as are necessary to enable the Insurer to effectively bring suit in their name, and will provide all other assistance and cooperation which the Insurer may reasonably require.

(J)    **EXHAUSTION**

If the Insurer's Limit of Liability for the Policy, as set forth in ITEM 3(g) of the Declarations, is exhausted by the payment of **Loss**, the premium as set forth in ITEM 8 of the Declarations will be fully earned, all obligations of the Insurer under this Policy will be completely fulfilled and exhausted, and the Insurer will have no further obligations of any kind whatsoever under this Policy. If the Insurer's Limit of Liability for any Coverage Part, as set forth in ITEM 3(a) – (f) of the Declarations, is exhausted by the payment of **Loss**, all obligations of the Insurer under that Coverage Part will be completely fulfilled and exhausted, and the Insurer will have no further obligations of any kind whatsoever under that Coverage Part.

(K)    **WARRANTY**

The **Insured** represents that the statements and particulars contained in the **Application** are true, accurate and complete, and agrees that this Policy is issued in reliance on the truth of that representation, and that such particulars and statements, which are deemed to be incorporated into and constitute a part of this Policy, are the basis of this Policy. No knowledge or information possessed by any **Insured** will be imputed to any other **Insured**. In the event that any of the particulars or statements in the **Application** are untrue, this Policy will be void with respect to any **Insured** who knew of such untruth or to whom such knowledge is imputed.

(L)    **ACTION AGAINST THE INSURER, ASSIGNMENT, AND CHANGES TO THE POLICY**

(1)    No action may be taken against the Insurer unless, as a condition precedent thereto:

    (a)    there has been full compliance with all of the terms and conditions of this Policy; and

    (b)    the amount of the obligation of the **Insured** has been finally determined either by judgment against the **Insured** after actual trial, or by written agreement of the **Insured**, the claimant and the Insurer.

***Mercury 000124***

**FINANCIAL SERVICES LIABILITY POLICY**
**FD 71 04 09 00**

(2)     Nothing contained herein shall give any person or entity any right to join the Insurer as a party to any **Claim** against the **Insured** to determine its liability, nor may the **Insured** implead the Insurer in any **Claim**.

(3)     Assignment of interest under this Policy shall not bind the Insurer unless its consent is endorsed hereon.

(4)     Notice to any agent or knowledge possessed by any agent or other person acting on behalf of the Insurer will not cause a waiver or change in any part of this Policy or prevent the Insurer from asserting any right under the terms, conditions and limitations of this Policy.  The terms, conditions and limitations of this Policy may only be waived or changed by written endorsement signed by the Insurer.

(M)     **AUTHORIZATION AND NOTICES**

It is understood and agreed that the **Named Insured** will act on behalf of the **Insureds** with respect to:

(1)     the payment of the premiums,

(2)     the receiving of any return premiums that may become due under this Policy,

(3)     the giving of all notices to the Insurer as provided herein, and

(4)     the receiving of all notices from the Insurer.

(N)     **ENTIRE AGREEMENT**

The **Insured** agrees that the Declarations, Policy, including the endorsements, attachments and the **Application** shall constitute the entire agreement between the Insurer or any of its agents and the **Insured** relating to this insurance.

*Mercury 000125*

**FINANCIAL SERVICES LIABILITY POLICY**
**FD 71 00 09 00**

# INVESTMENT ADVISERS MANAGEMENT LIABILITY COVERAGE PART

**THIS IS A CLAIMS MADE COVERAGE PART WITH DEFENSE EXPENSES INCLUDED IN THE LIMIT OF LIABILITY.  PLEASE READ AND REVIEW THE POLICY CAREFULLY.**

**In consideration of the payment of the premium, and in reliance on all statements made and information furnished to the Company identified in the Declarations (hereinafter the Insurer), including the Application, and subject to all of the terms, conditions and limitations of all of the provisions of this Policy, the Insurer and the Insureds agree as follows:**

## I.    INSURING AGREEMENTS

(A)    The Insurer shall pay on behalf of the **Insured Persons Loss** resulting from **Claims** first made against the **Insured Persons** during the **Policy Period** or, if applicable, the Optional Extension Period, for **Wrongful Acts**, except for **Loss** which the **Adviser** is permitted or required to pay on behalf of the **Insured Persons** as indemnification.

(B)    The Insurer shall pay on behalf of the **Adviser Loss** which the **Adviser** is required or is permitted to pay as indemnification to:

    (1)    the **Insured Persons** resulting from **Claims** first made against the **Insured Persons**; or

    (2)    the **Adviser** resulting from **Claims** first made against the **Adviser**;

during the **Policy Period** for **Wrongful Acts**.

## II.    DEFINITIONS

(A)    "**Adviser**" means the **Named Insured** and any **Subsidiary** created or acquired on or before the Inception Date set forth in ITEM 2 of the Declarations or, subject to CONDITION (A) of this Coverage Part, during the **Policy Period**.

(B)    "**Claim**," as defined in GENERAL DEFINITIONS (B), shall be deemed to include, for purposes of this Coverage Part, a formal civil, criminal, administrative, or regulatory investigation of an **Insured** which is commenced by the filing or issuance of notice of charges, formal investigative order or similar document identifying such **Insured** as a person or entity against whom a proceeding as described in GENERAL DEFINITIONS  (B)(2) or (3) may be commenced.

(C)    "**Insured**" means the **Insured Persons** and the **Adviser**.

(D)    "**Insured Person**" means:

    (1)    any past, present or future director, officer, or member of the Board of Managers of the **Adviser**;

    (2)    those persons serving in a functionally equivalent role for the **Named Insured** or any **Subsidiary** operating or incorporated outside the United States; and

    (3)    an individual identified in (D)(1) or (2) above who, at the specific written request of the **Adviser**, is serving as a director, officer, trustee, regent or governor of a **Non-Profit Entity**;

*Mercury 000126*

**FINANCIAL SERVICES LIABILITY POLICY
FD 71 00 09 00**

In the event of the death, incapacity or bankruptcy of an individual identified in (D)(1), (2) or (3) above, any **Claim** against the estate, heirs, legal representatives or assigns of such individual for a **Wrongful Act** of such individual will be deemed to be a **Claim** against such individual.

(E)   "**Non-Profit Entity**" means a corporation or organization, other than the **Adviser**, which is exempt from taxation under Section 501(c)(3), (4) or (10) of the Internal Revenue Code as amended or any rule or regulation promulgated thereunder.

(F)   "**Wrongful Act**" means:

    (1)   with respect to any **Insured Person** of the **Adviser**, any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty but solely by reason of his or her status as such; and

    (2)   with respect to the **Adviser**, any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty by the **Adviser**.

## III.    EXCLUSIONS

The Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** made against an **Insured**:

(A)   brought about or contributed to in fact by any:

    (1)   intentionally dishonest, fraudulent or criminal act or omission or any willful violation of any statute, rule or law; or

    (2)   profit or remuneration gained by any **Insured** to which such **Insured** is not legally entitled;

as determined by a final adjudication in the underlying action or in a separate action or proceeding. Each **Insured** agrees that, if the Insurer has no liability to an **Insured** for **Loss** as a result of a **Claim** by reason of this EXCLUSION (A), such **Insured** will repay the Insurer upon demand all **Loss** paid on behalf of such **Insured** in connection with such **Claim**;

(B)   based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, event or **Wrongful Act** which, before the Inception Date of this Policy, was the subject of any notice given under any other policy of insurance;

(C)   for any actual or alleged bodily injury, sickness, mental anguish, emotional distress, libel, slander, oral or written publication of defamatory or disparaging material, disease or death of any person, or damage or destruction of any tangible property including loss of use thereof;

(D)   based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual, alleged or threatened discharge, dispersal, release, escape, seepage, transportation, emission, treatment, removal or disposal of pollutants, contaminants, or waste of any kind including but not limited to nuclear material or nuclear waste or any actual or alleged direction, request or voluntary decision to test for, abate, monitor, clean up, recycle, remove, recondition, reclaim, contain, treat, detoxify or neutralize pollutants, contaminants or waste of any kind including but not limited to nuclear material or nuclear waste;

(E)   based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, event or **Wrongful Act** underlying or alleged in any prior and/or pending litigation or administrative or regulatory proceeding which incepted prior to the Pending And Prior Proceeding Date set forth in ITEM 6(a) of the Declarations;

(F)   brought by, or on behalf of, or at the direction of any **Insured**, except and to the extent such **Claim**:

*Mercury 000127*

**FINANCIAL SERVICES LIABILITY POLICY**
**FD 71 00 09 00**

(1)    is brought derivatively by a security holder of the **Adviser** who, when such **Claim** is made and maintained, is acting independently of, and without the solicitation, assistance, participation or intervention of any **Insured**;

(2)    is brought by the Bankruptcy Trustee or Examiner of the Company or any assignee of such Trustee or Examiner, or any Receiver, Conservator, Rehabilitator, or Liquidator or comparable authority of the **Adviser**;

(3)    is brought in the form of a crossclaim, third party claim or other claim for contribution or indemnity by an **Insured Person** which is part of or results directly from a **Claim** which is not otherwise excluded by the terms of this Policy; or

(4)    is brought for the actual or alleged wrongful termination of an **Insured Person**.

(G)    for any actual or alleged liability of the **Adviser** under any express contract or agreement; however, this EXCLUSION (G) will apply only to the coverage available to the **Adviser** under INSURING AGREEMENT (B)(2).  With respect to this EXCLUSION (G), an "express contract or agreement" is defined as an actual agreement of the parties, the terms of which are openly set forth or declared at the time of making in clear or distinct language;

(H)    based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving an **Insured Person** acting in his or her capacity as a director, officer, partner, principal, member, trustee or employee of any entity other than the **Adviser**;

(I)    for any actual or alleged violation of the Securities Act of 1933, the Securities Exchange Act of 1934 or any rule or regulation promulgated thereunder in connection with the offering, sale or purchase of securities of the **Adviser**; however, this EXCLUSION (I) shall not apply to any **Claim** arising out of the offering, sale or purchase of securities, whether debt or equity, in a transaction that is exempt from registration under the Securities Act of 1933;

(J)    based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged violation of the Employee Retirement Income Security Act of 1974 (ERISA), as amended, or any regulation promulgated thereunder or any similar, federal, state or local law or regulation;

(K)    by, on behalf of, at the direction of or in the name or right of any **Non-Profit Entity** against an **Insured Person** for a **Wrongful Act** while acting in his or her capacity as a director, officer, trustee, regent or governor of such **Non-Profit Entity**; or

(L)    for any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty in connection with the **Insured's** rendering, or actual or alleged failure to render, services for others; however, this EXCLUSION (L) will not apply to any **Claim** brought by a security holder of the **Adviser** solely in their capacity as a security holder of the **Adviser**.

No conduct of any **Insured Person** will be imputed to any other **Insured Person** to determine the application of any of the above EXCLUSIONS.

IV.    **CONDITIONS**

(A)    MERGERS AND ACQUISITIONS (CHANGES IN EXPOSURE OR CONTROL):

(1)    If, during the **Policy Period**, the **Adviser** acquires any assets, acquires a **Subsidiary**, or acquires any entity by merger (each an "Acquired Entity") such that the **Adviser** is the surviving entity (a "Transaction"):

*Mercury 000128*

(a)     there will be coverage available under this Coverage Part for any **Claim** made against the Acquired Entity and its directors, officers, or members of the Board of Managers for any **Wrongful Act** committed or allegedly committed after the effective date of the Transaction for a period of ninety (90) days after the effective date of the Transaction (not to exceed the Policy Expiration Date);

(b)     there will be no coverage available under this Coverage Part for any **Claim** made against the Acquired Entity or any of its directors, officers, or members of the Board of Managers for any **Wrongful Act** committed or allegedly committed after the effective date of the Transaction beyond the ninety (90) day period, unless:

   (i)     any of the gross annual fees, assets under management or assets of the Acquired Entity are less than thirty-five percent (35%) of the gross annual fees, assets under management or assets, respectively, of the **Adviser** at the time immediately preceding the Transaction; and

   (ii)     the **Named Insured** gives the Insurer written notice, with full details, of the Transaction within the ninety (90) day period;

(c)     there will be no coverage available under this Coverage Part for any **Claim** made against the Acquired Entity or any of its directors, officers, or members of the Board of Managers for any **Wrongful Acts** committed or allegedly committed before the effective date of the Transaction.

(2)     If, during the **Policy Period**, any of the following events occurs:

(a)     the merger or acquisition of the **Adviser**, or of all or substantially all of its assets by another entity such that that the **Adviser** is not the surviving entity;

(b)     the acquisition by any person, entity or affiliated group of persons or entities of the right to vote for, select or appoint more than fifty percent (50%) of the directors, trustees, or members of the Board of Managers of the **Adviser**; or

(c)     the appointment of a Receiver, Conservator, Liquidator, Trustee, Rehabilitator, or any comparable authority, with respect to the **Adviser**;

coverage under this Coverage Part will continue in full force and effect with respect to **Claims** for **Wrongful Acts** committed before such event, but coverage will cease with respect to any **Claims** for **Wrongful Acts** committed after such event.  Immediately upon the consummation of any such event the entire premium for this Coverage Part will be deemed fully earned.

(3)     If, during the **Policy Period**, any entity ceases to be a **Subsidiary**, the coverage provided under this Coverage Part shall continue to apply to the **Insureds** that were covered under this Coverage Part but only with respect to a **Claim** for a **Wrongful Act** that occurred or allegedly occurred prior to the time such **Subsidiary** ceased to be a **Subsidiary** of the **Named Insured**.

.

*Mercury 000129*

# INVESTMENT ADVISERS PROFESSIONAL LIABILITY COVERAGE PART

**THIS IS A CLAIMS MADE COVERAGE PART WITH DEFENSE EXPENSES INCLUDED IN THE LIMIT OF LIABILITY. PLEASE READ AND REVIEW THE POLICY CAREFULLY.**

**In consideration of the payment of the premium, and in reliance on all statements made and information furnished to the Company identified in the Declarations (hereinafter the Insurer), including the Application, and subject to all of the terms, conditions and limitations of all of the provisions of this Policy, the Insurer and the Insureds agree as follows:**

## I.    INSURING AGREEMENT

The Insurer shall pay on behalf of the **Insureds Loss** resulting from **Claims** first made against the **Insureds** during the **Policy Period** or, if applicable, the Optional Extension Period, for **Wrongful Acts**.

## II.    DEFINITIONS:

(A)    "**Adviser**" means the **Named Insured** and any **Subsidiary** created or acquired on or before the Inception Date set forth in ITEM 2 of the Declarations or, subject to CONDITION (A) of this Coverage Part, during the **Policy Period**.

(B)    "**Insured**" means the **Insured Persons** and the **Adviser**.

(C)    "**Insured Person**" means any past, present or future director, officer, partner, principal, member, trustee or employee of the **Adviser**.

(D)    "**Professional Services**" means:

(1)    financial, economic or investment advice given or investment management services performed for others for a fee or commission by the **Adviser** or on behalf of the **Adviser** by any person or entity;

(2)    the provision of computer and Internet services, administrative services, and publications prepared or written by any **Insured**, provided such services are performed in connection with the **Adviser's** financial or investment operations; or

(3)    the selection, oversight and direction by any **Insured** of any person or entity performing **Professional Services** on behalf of the **Adviser**.

(E)    "**Wrongful Act**" means:

(1)    any actual or alleged act, error, omission, misstatement, misleading statement or breach of fiduciary duty or other duty committed by any **Insured** in the performance of, or failure to perform, **Professional Services**; and

(2)    any actual or alleged libel, slander, or oral or written publication of defamatory or disparaging material committed by any **Insured** in the performance of **Professional Services**.

## III.    EXCLUSIONS

*Mercury 000130*

**FINANCIAL SERVICES LIABILITY POLICY**
**FD 71 01 09 00**

The Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** made against an **Insured**:

(A)      brought about or contributed to in fact by any:

      (1)      intentionally dishonest, fraudulent or criminal act or omission or any willful violation of any statute, rule or law; or

      (2)      profit or remuneration gained by any **Insured** to which such **Insured** is not legally entitled;

      as determined by a final adjudication in the underlying action or in a separate action or proceeding.  Each **Insured** agrees that, if the Insurer has no liability to an **Insured** for **Loss** as a result of a **Claim** by reason of this EXCLUSION (A), such **Insured** will repay the Insurer upon demand all **Loss** paid on behalf of such **Insured** in connection with such **Claim**;

(B)      based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, event or **Wrongful Act** which, before the Inception Date of this Policy, was the subject of any notice given under any other policy of insurance;

(C)      for any actual or alleged bodily injury, sickness, mental anguish, emotional distress, libel, slander, invasion of privacy, malicious use or abuse of process, malicious prosecution, wrongful entry or eviction, false arrest, false imprisonment, assault, battery, oral or written publication of defamatory or disparaging material, disease or death of any person, or damage or destruction of any tangible property including loss of use thereof; however, this EXCLUSION (C) will not apply to any:

      (1)      alleged mental anguish or emotional distress to the extent that they arise from an **Insured's** performance of **Professional Services**;

      (2)      actual or alleged libel, slander, oral or written publication of defamatory or disparaging material committed by an **Insured** in the performance of **Professional Services**; or

      (3)      **Claim** arising from damage to, destruction of, or loss of use of, client records in an **Insured's** possession.

(D)      based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual, alleged or threatened discharge, dispersal, release, escape, seepage, transportation, emission, treatment, removal or disposal of pollutants, contaminants, or waste of any kind including but not limited to nuclear material or nuclear waste or any actual or alleged direction, request or voluntary decision to test for, abate, monitor, clean up, recycle, remove, recondition, reclaim, contain, treat, detoxify or neutralize pollutants, contaminants or waste of any kind including but not limited to nuclear material or nuclear waste;

(E)      based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, event or **Wrongful Act** underlying or alleged in any prior and/or pending litigation or administrative or regulatory proceeding which incepted prior to the Pending And Prior Proceeding Date set forth in ITEM 6(b) of the Declarations;

(F)      brought by, or on behalf of, or at the direction of any **Insured**, except and to the extent such **Claim** is brought:

      (1)      in the form of a crossclaim, third party claim or other claim for contribution or indemnity by an **Insured Person** which is part of or results directly from a **Claim** which is not otherwise excluded by the terms of this Policy;

      (2)      by an **Insured Person**, solely in his or her capacity as a client or customer of the **Adviser**; or

      (3)      by an **Insured** with respect to which failure to make such **Claim** would result in liability to the **Insured** for failure to do so;

*Mercury 000131*

FINANCIAL SERVICES LIABILITY POLICY
FD 71 01 09 00

(G)    for any actual or alleged liability of the **Adviser** under any express contract or agreement; however, this EXCLUSION (G) will not apply to:

(1)    any **Claim** against an **Insured** by a client or customer of the **Adviser**, if and to the extent that the **Claim** alleges a breach of contractual obligations in the rendering of or failure to render **Professional Services**; or

(2)    liability which would attach to an **Insured** even in the absence of a contract or agreement.

With respect to this EXCLUSION (G), an "express contract or agreement" is defined as an actual agreement of the parties, the terms of which are openly set forth or declared at the time of making in clear or distinct language;

(H)    based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving an **Insured Person** acting in his or her capacity as a director, officer, partner, principal, member, trustee or employee of any entity other than the **Adviser**;

(I)    based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged violation of the Employee Retirement Income Security Act of 1974 (ERISA), as amended, or any regulation promulgated thereunder or any similar, federal, state or local law or regulation; however, this EXCLUSION (I) will only apply to any **Insured's** pension, employee benefit or welfare plan;

(J)    based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the **Insured's** rendering of investment banking services, including:

(1)    the underwriting, syndicating or promoting of any debt or equity securities; or

(2)    service as a consultant, adviser or specialist relating to or in connection with any actual, attempted or threatened merger, acquisition, securities offering, restructuring, divestiture or other investment banking activity;

(K)    based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the insolvency of any bank, banking firm, broker or dealer in securities, or any other person or entity, or the inability of any such entity or person to make any payment or settle or effect any transaction of any kind; however, this EXCLUSION (K) will not apply to any **Claim** arising from the performance of, or failure to perform, **Professional Services**.

(L)    based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any **Insured's** activity as a "broker" or "dealer" in securities, as those terms are defined in Section 3(a)(4), 3(a)(5) and 3(a)(6) of the Securities and Exchange Act of 1934, as amended; however, this EXCLUSION (L) will not apply to any **Claim** based on an **Insured's** distribution, underwriting or resale of securities purchased by an **Insured** directly from a mutual fund affiliated with the **Insured** solely for resale to shareholders of that fund.

No conduct of any **Insured Person** will be imputed to any other **Insured Person** to determine the application of any of the above EXCLUSIONS.

## IV.    CONDITIONS

(A)    MERGERS AND ACQUISITIONS (CHANGES IN EXPOSURE OR CONTROL):

**FINANCIAL SERVICES LIABILITY POLICY**
**FD 71 01 09 00**

(1)     If, during the **Policy Period**, the **Adviser** acquires any assets, acquires a **Subsidiary**, or acquires any entity by merger (each an "Acquired Entity") such that the **Adviser** is the surviving entity (a "Transaction"):

    (a)     there will be coverage available under this Coverage Part for any **Claim** made against the Acquired Entity and its directors, officers, partners, principals, members, trustees or employees for any **Wrongful Act** committed or allegedly committed after the effective date of the Transaction for a period of ninety (90) days after the effective date of the Transaction (not to exceed the Policy Expiration Date);

    (b)     there will be no coverage available under this Coverage Part for any **Claim** made against the Acquired Entity or any of its directors, officers, partners, principals, members, trustees or employees for any **Wrongful Act** committed or allegedly committed after the effective date of the Transaction beyond the ninety (90) day period, unless:

        (i)     any of the gross annual fees, assets under management or assets of the Acquired Entity are less than thirty-five percent (35%) of the gross annual fees, assets under management or assets, respectively, of the **Adviser** at the time immediately preceding the Transaction; and

        (ii)     the **Named Insured** gives the Insurer written notice, with full details, of the Transaction within the ninety (90) day period;

    (c)     there will be no coverage available under this Coverage Part for any **Claim** made against the Acquired Entity or any of its directors, officers, partners, principals, members, trustees or employees for any **Wrongful Acts** committed or allegedly committed before the effective date of the Transaction.

(2)     If, during the Policy Period, any of the following events occurs:

    (a)     the merger or acquisition of the **Adviser**, or of all or substantially all of its assets by another entity such that that the **Adviser** is not the surviving entity;

    (b)     the acquisition by any person, entity or affiliated group of persons or entities of the right to vote for, select or appoint more than fifty percent (50%) of the directors, trustees, or members of the Board of Managers of the **Adviser**; or

    (c)     the appointment of a Receiver, Conservator, Liquidator, Trustee, Rehabilitator, or any comparable authority, with respect to the **Adviser**;

coverage under this Coverage Part will continue in full force and effect with respect to **Claims** for **Wrongful Acts** committed before such event, but coverage will cease with respect to any **Claims** for **Wrongful Acts** committed after such event.  Immediately upon the consummation of any such event the entire premium for this Coverage Part will be deemed fully earned.

(3)     If, during the **Policy Period**, any entity ceases to be a **Subsidiary**, the coverage provided under this Coverage Part shall continue to apply to the **Insureds** that were covered under this Coverage Part but only with respect to a **Claim** for a **Wrongful Act** that occurred or allegedly occurred prior to the time such **Subsidiary** ceased to be a **Subsidiary** of the **Named Insured**.

**FINANCIAL SERVICES LIABILITY POLICY**
**FD 71 05 09 00**

# INVESTMENT FUND MANAGEMENT AND PROFESSIONAL LIABILITY COVERAGE PART

**THIS IS A CLAIMS MADE COVERAGE PART WITH DEFENSE EXPENSES INCLUDED IN THE LIMIT OF LIABILITY. PLEASE READ AND REVIEW THE POLICY CAREFULLY.**

**In consideration of the payment of the premium, and in reliance on all statements made and information furnished to the Company identified in the Declarations (hereinafter the Insurer), including the Application, and subject to all of the terms, conditions and limitations of all of the provisions of this Policy, the Insurer and the Insureds agree as follows:**

## I.    INSURING AGREEMENT

The Insurer shall pay on behalf of the **Insureds Loss** resulting from **Claims** first made against the **Insureds** during the **Policy Period** or, if applicable, the Optional Extension Period, for **Wrongful Acts**.

## II.    DEFINITIONS:

(A)    "**Insured**" means:

    (1)    the **Named Insured**;

    (2)    the **Insured Persons**;

    (3)    each **Investment Fund**;

    (4)    the general partner or managing general partner of each **Investment Fund** that is organized as a limited partnership; and

    (5)    the managing member of each **Investment Fund** that is organized as a limited liability company;

    An **Outside Entity** is not an **Insured**.

(B)    "**Insured Entity**" means any **Insured** that is organized as a corporation, limited liability company or limited partnership.

(C)    "**Insured Person**" means any past, present or future director, officer, partner, principal, member, trustee or employee of:

    (1)    an **Investment Fund**;

    (2)    the general partner or managing general partner of each **Investment Fund** that is organized as a limited partnership; and

    (3)    the managing member of any **Investment Fund** organized as a limited liability company.

    (4)    any individual serving on an advisory board or advisory committee of an **Investment Fund**, which advisory board or advisory committee was created pursuant to a limited partnership agreement or equivalent documents of such **Investment Fund**.

*Mercury 000134*

**FINANCIAL SERVICES LIABILITY POLICY**
**FD 71 05 09 00**

(D)    "**Investment Fund**" means:

    (1)    any fund which is listed in the Schedule of **Investment Funds** attached to and forming part of this Coverage Part; and

    (2)    subject to CONDITION (A) of this Coverage Part, any pooled investment vehicle formed by the **Named Insured** during the **Policy Period**.

(E)    "**Non-Profit Entity**" means a corporation or organization, other than an **Insured**, which is exempt from taxation under Section 501(c)(3), (4) and (10) of the Internal Revenue Code as amended or any rule or regulation promulgated thereunder.

(F)    "**Outside Capacity**" means service by an **Insured Person** as a director, officer, trustee, regent, governor or member of the Board of Managers of an **Outside Entity**, but only during the time that such service is at the specific request of an **Insured Entity**.

(G)    "**Outside Entity**" means any **Non-Profit Entity** and any **Portfolio Company**.

(H)    "**Portfolio Company**" means any entity during any time in which an **Insured**, through an **Investment Fund**, owns or controls outstanding securities representing the right to vote for the election of such entity's directors or members of the Board of Managers.

(I)    "**Professional Services**" means:

    (1)    advisory or other services performed by an **Investment Fund** or on behalf of an **Investment Fund** by any person or entity, provided such services are performed in connection with the management or operation of such **Investment Fund**.

    (2)    the provision of computer and Internet services, administrative services, and publications prepared or written by any **Insured**, provided such services are performed in connection with the management or operation of an **Investment Fund**.

    (3)    the selection, oversight and direction by any **Insured** of any person or entity performing **Professional Services** on behalf of an **Investment Fund**.

(J)    "**Wrongful Act**" means:

    (1)    any actual or alleged act, error, omission, misstatement, misleading statement or breach of fiduciary duty or other duty committed by an **Insured** in the performance of, or failure to perform, **Professional Services**;

    (2)    any actual or alleged libel, slander, or oral or written publication of defamatory or disparaging material committed by an **Insured** in the performance of **Professional Services**;

    (3)    any actual or alleged act, error, omission, misstatement, misleading statement or breach of fiduciary duty or other duty committed by an **Insured Person** in his or her capacity as a director, officer, member of the Board of Managers, general partner, or managing general partner of an **Investment Fund**;

    (4)    any matter asserted against an **Insured Person** solely by reason of his or her status as a director, officer, member of the Board of Managers, general partner, or managing general partner of an **Investment Fund**; and

    (5)    any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty by an **Insured Person** in his or her **Outside Capacity**.

*Mercury 000135*

FINANCIAL SERVICES LIABILITY POLICY
FD 71 05 09 00

## III.    EXCLUSIONS:

The Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** made against an **Insured**:

(A)    brought about or contributed to in fact by any:

(1)    intentionally dishonest, fraudulent or criminal act or omission or any willful violation of any statute, rule or law; or

(2)    profit or remuneration gained by any **Insured** to which such **Insured** is not legally entitled;

as determined by a final adjudication in the underlying action or in a separate action or proceeding.  Each **Insured** agrees that, if the Insurer has no liability to an **Insured** for **Loss** as a result of a **Claim** by reason of this EXCLUSION (A), such **Insured** will repay the Insurer upon demand all **Loss** paid on behalf of such **Insured** in connection with such **Claim**;

(B)    based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, event or **Wrongful Act** which, before the Inception Date of this Policy, was the subject of any notice given under any other policy of insurance;

(C)    for any actual or alleged bodily injury, sickness, mental anguish, emotional distress, libel, slander, invasion of privacy, malicious use or abuse of process, malicious prosecution, wrongful entry or eviction, false arrest, false imprisonment, assault, battery, oral or written publication of defamatory or disparaging material, disease or death of any person, or damage or destruction of any tangible property including loss of use thereof; however, this EXCLUSION (C) will not apply to any:

(1)    alleged mental anguish or emotional distress to the extent that they arise from an **Insured's** performance of **Professional Services**;

(2)    actual or alleged libel, slander, oral or written publication of defamatory or disparaging material committed by an **Insured** in the performance of **Professional Services**; or

(3)    **Claim** arising from damage to, destruction of, or loss of use of, client records in an **Insured's** possession.

(D)    based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual, alleged or threatened discharge, dispersal, release, escape, seepage, transportation, emission, treatment, removal or disposal of pollutants, contaminants, or waste of any kind including but not limited to nuclear material or nuclear waste or any actual or alleged direction, request or voluntary decision to test for, abate, monitor, clean up, recycle, remove, recondition, reclaim, contain, treat, detoxify or neutralize pollutants, contaminants or waste of any kind including but not limited to nuclear material or nuclear waste;

(E)    based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, event or **Wrongful Act** underlying or alleged in any prior and/or pending litigation or administrative or regulatory proceeding which incepted prior to the Pending And Prior Proceeding Date set forth in ITEM 6(d) of the Declarations;

(F)    brought by, or on behalf of, or at the direction of any **Insured**, except and to the extent such **Claim** is brought:

(1)    in the form of a crossclaim, third party claim or other claim for contribution or indemnity by an **Insured Person** which is part of or results directly from a **Claim** which is not otherwise excluded by the terms of this Policy;

(2)    by an **Insured** with respect to which failure to make such **Claim** would result in liability to the **Insured** for failure to do so; or

*Mercury 000136*

FINANCIAL SERVICES LIABILITY POLICY
FD 71 05 09 00

(3)    derivatively by a security holder of an **Investment Fund** who, when such **Claim** is made and maintained, is acting independently of, and without the solicitation, assistance, participation or intervention of any **Insured**.

(G)    for any actual or alleged liability of an **Insured** under any express contract or agreement; however, this EXCLUSION (G) will not apply to liability which would attach to an **Insured** even in the absence of a contract or agreement.  With respect to this EXCLUSION (G), an "express contract or agreement" is defined as an actual agreement of the parties, the terms of which are openly set forth or declared at the time of making in clear or distinct language.

(H)    based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving an **Insured Person** acting in his or her capacity as a director, officer, partner, principal, member, trustee or employee of any entity other than an **Insured** or **Outside Entity**;

(I)    brought by or on behalf of, or in the name or right of, any **Outside Entity** against an **Insured Person** for a **Wrongful Act** committed in his or her **Outside Capacity** with respect to such **Outside Entity**; however, this EXCLUSION (I) will not apply to any derivative action by a security holder of an **Outside Entity** on behalf of, or in the name or right of, an **Outside Entity**, if such action is brought and maintained independently of, and without the solicitation, assistance, participation or intervention of, any **Outside Entity or Insured**.

(J)    based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged violation of the Employee Retirement Income Security Act of 1974 (ERISA), as amended, or any regulation promulgated thereunder or any similar, federal, state or local law or regulation; however, this EXCLUSION (J) will only apply to any **Insured's** pension, employee benefit or welfare plan;

(K)    based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any **Insured's** activity as a "broker" or "dealer" in securities, as those terms are defined in Section 3(a)(4), 3(a)(5) and 3(a)(6) of the Securities and Exchange Act of 1934, as amended; however, this EXCLUSION (K) will not apply to any **Claim** arising from the rendering or failing to render **Professional Services**;

No conduct of any **Insured Person** will be imputed to any other **Insured Person** to determine the application of any of the above EXCLUSIONS.

## IV.    CONDITIONS

(A)    NEWLY CREATED INVESTMENT FUNDS:

If, during the Policy Period, an **Insured Entity** creates an **Investment Fund**:

(1)    there will be coverage available under this Coverage Part for any **Claim** made against the newly created **Investment Fund** or its general partner(s), managing general partner(s), managing member(s), directors, officers, partners, principals, trustees or employees for a period of ninety (90) days after the creation of such **Investment Fund**; and

(2)    there will be no coverage available under this Coverage Part for any **Claim** made against the newly created **Investment Fund** or its general partner(s), managing general partner(s), managing member(s), directors, officers, partners, principals, trustees or employees after the creation of such **Investment Fund** beyond the ninety (90) day period unless:

(a)    the offering amount of the newly created **Investment Fund** is less than 175% of the offering amount of the most recently created **Investment Fund** which is listed in the Schedule of **Investment Funds** attached to and forming part of this Coverage Part; and

**FINANCIAL SERVICES LIABILITY POLICY**
**FD 71 05 09 00**

(b)    the **Named Insured** gives the Insurer written notice, with full details, of the creation of such **Investment Fund** within the ninety (90) day period.

(B)    MERGERS AND ACQUISITIONS (CHANGES IN EXPOSURE OR CONTROL):

(1)    If, during the **Policy Period**, an **Insured Entity** acquires a **Subsidiary**, or acquires any entity by merger (each an "Acquired Entity") such that the **Insured Entity** is the surviving entity (a "Transaction"):

(a)    there will be coverage available under this Coverage Part for any **Claim** made against the Acquired Entity and its directors, officers, partners, principals, members or trustees for any **Wrongful Act** committed or allegedly committed after the effective date of the Transaction for a period of ninety (90) days after the effective date of the Transaction (not to exceed the Policy Expiration Date);

(b)    there will be no coverage available under this Coverage Part for any **Claim** made against the Acquired Entity or any of its directors, officers, partners, principals, members or trustees for any **Wrongful Act** committed or allegedly committed after the effective date of the Transaction beyond the ninety (90) day period, unless:

(i)    any of the gross annual fees, assets under management or assets of the Acquired Entity are less than thirty-five percent (35%) of the gross annual fees, assets under management or assets, respectively, of the **Insured Entity** at the time immediately preceding the Transaction; and

(ii)    the **Named Insured** gives the Insurer written notice, with full details, of the Transaction within the ninety (90) day period;

(c)    there will be no coverage available under this Coverage Part for any **Claim** made against the Acquired Entity or any of its directors, officers, partners, principals, members, trustees or employees for any **Wrongful Acts** committed or allegedly committed before the effective date of the Transaction.

(2)    If, during the **Policy Period**, any of the following events occurs:

(a)    the merger or acquisition of an **Insured Entity**, or of all or substantially all of its assets by another entity such that that the **Insured Entity** is not the surviving entity;

(b)    the acquisition by any person, entity or affiliated group of persons or entities of the right to vote for, select or appoint more than fifty percent (50%) of the directors, trustees, members or board of management of an **Insured Entity**;

(c)    the appointment of a Receiver, Conservator, Liquidator, Trustee, Rehabilitator, or any comparable authority, with respect to an **Insured Entity**; or

(d)    the sale, spin-off or termination of an **Insured Entity**;

coverage under this Coverage Part will continue in full force and effect for such **Insured Entity** with respect to **Claims** for **Wrongful Acts** committed before such event, but coverage will cease with respect to any **Claims** for **Wrongful Acts** committed after such event.  Immediately upon the consummation of any such event the entire premium for this Coverage Part will be deemed fully earned.

(3)    If, during the **Policy Period**, any entity ceases to be a **Subsidiary**, the coverage provided under this Coverage Part shall continue to apply to the **Insureds** that were covered under this Coverage Part but

**FINANCIAL SERVICES LIABILITY POLICY**
**FD 71 05 09 00**

only with respect to a **Claim** for a **Wrongful Act** that occurred or allegedly occurred prior to the time such **Subsidiary** ceased to be a **Subsidiary** of the **Named Insured**.

(C)    SERVICE IN CONNECTION WITH OUTSIDE ENTITIES

(1)    All coverage under this Coverage Part for **Loss** from **Claims** made against **Insured Persons** while acting in their **Outside Capacities** will be specifically excess of, and will not contribute with,:

(a)    any other insurance available to such **Insured Persons** by reason of their service in **Outside Capacities**; and

(b)    any indemnification by any person or entity other than an **Insured Entity**, including any **Outside Entity**, available to such **Insured Persons** by reason of their service in **Outside Capacities**.

(2)    The certificate of incorporation, charter, articles of association or other organizational documents of each **Outside Entity**, including bylaws and resolutions, will be deemed to provide indemnification to the **Insured Persons** to the fullest extent permitted by law.

(3)    If, during the **Policy Period**, an **Insured Person** discontinues his or her service in an **Outside Capacity**, coverage under this Coverage Part will continue in full force and effect for the **Insured Person** in such **Outside Capacity**, but only with respect to **Claims** for **Wrongful Acts** committed before the time the **Insured Person** discontinued serving in such capacity.

# Financial Products Policy

Coverage Section: **General Terms and Conditions**          Insurer: **RLI Insurance Company**

Effective date of                                          To be attached to and form part of
this endorsement: **1/14/2021**                            Policy No.  **EPG0027934**

Issued to: **Mercury Capital Advisors Group, LP**

---

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CHANGE ENDORSEMENT

[X] Additional Premium
[ ] Return Premium
[ ] No Premium Change
    Total

It is understood and agreed that:

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| [ ] | 1. | Premium | [ ] | 7. | Coverage | [ ] 13. | Coverage is cancelled |
| [ ] | 2. | Advance Premium | [ ] | 8. | Inception Date | [ ] | Short Rate |
| [ ] | 3. | Minimum Premium | [X] | 9. | Expiration Date | [ ] | Pro Rate |
| [ ] | 4. | Rate | [ ] | 10. | Terms | [ ] | Minimum Premium Applies |
| [ ] | 5. | Installment | [ ] | 11. | Name of Insured | [ ] 14. | Additional Insured but only as respects the operations of the Named Insured |
| [ ] | 6. | Audit | [ ] | 12. | Address of Insured | | |
| [ ] | | Is charged for the period: | [X] | | Is amended to read as follows: | | |

In consideration of an additional premium of ▮▮▮▮, Item 2. Policy Period of the Declarations is amended to read as follows:

Item 2. Policy Period:    From  12:01 A.M. on 12/14/2019
                          To    12:01 A.M.    01/14/2022
                          Local time at the address shown in Item 1.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

FPP 2100 (06/04)                                                          Page 1 of 1
                                       Insured

*Mercury 000140*



**XL Insurance**

**AXA XL - Professional Insurance**
100 Constitution Plaza, 17th Floor
Hartford, CT 06103
Phone 860-246-1863
Fax 860-246-1899

## FINANCIAL SERVICES LIABILITY BINDER

| | |
|---|---|
| Date: | December 21, 2021 **revised** |
| Name: | Graig Vicidomino |
| Company: | Alliant Insurance Services (Crystal & Co.) |
| From: | Nicolas Carlson    Direct: 860-948-1850    nicolas.carlson@axaxl.com |

### INSURED INFORMATION

| | |
|---|---|
| Name: | Mercury Capital Advisors Group LP |
| Address: | 225 Liberty Street, 36th Floor |
| | New York, NY  10281 |
| Policy Number: | **ELU180035-21** |
| Carrier: | XL Specialty Insurance Company |

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

| POLICY FORM | | POLICY PERIOD |
|---|---|---|
| FD 71 04 09 00 | General Terms & Conditions | |
| FD 71 00 09 00 | Investment Advisors Management Liability | |
| FD 71 01 09 00 | Investment Advisors Professional Liability | |
| FD 71 06 09 00 | Mutual Fund Management and Professional Liability | December 14, 2021 to December 14, 2022 |
| FD 71 05 09 00 | Investment Fund Management and Professional Liability | |
| FD 71 02 09 00 | Employment Practices Liability | |
| FD 71 03 09 00 | Pension and Welfare Benefit Plan Fiduciary Liability | |

| LIMIT of LIABILITY | | PENDING & PRIOR PROCEEDING DATE(S) | |
|---|---|---|---|
| $3,000,000 | Maximum Aggregate Limit of Liability (including Defense Expenses) for all Claims under the Investment Advisors Management Liability Coverage Part | December 01, 2009 | For the Investment Advisors Management Liability Coverage Part |
| $3,000,000 | Maximum Aggregate Limit of Liability (including Defense Expenses) for all Claims under the Investment Advisors Professional Liability Coverage Part | December 01, 2009 | For the Investment Advisors Professional Liability Coverage Part |
| N/A | Maximum Aggregate Limit of Liability (including Defense Expenses) for all Claims under the Mutual Fund Management and Professional Liability Coverage Part | N/A | For the Mutual Fund Management and Professional Liability Coverage Part |
| $3,000,000 | Maximum Aggregate Limit of Liability (including Defense Expenses) for all Claims under the Investment Fund Management and Professional Liability Coverage Part | December 14, 2018 | For the Investment Fund Management and Professional Liability Coverage Part |
| N/A | Maximum Aggregate Limit of Liability (including Defense Expenses) for all Claims under the Employment Practices Liability Coverage Part | N/A | For the Employment Practices Liability Coverage Part |

IF THE TOTAL PREMIUM IS NOT PAID BY THE PREMIUM DUE DATE SET FORTH ABOVE, THE INSURER WILL CANCEL THE COVERAGE FOR NON-PAYMENT OF PREMIUM.  THE EFFECT OF SUCH CANCELLATION WILL BE THAT THE OFFERED COVERAGE SHALL NOT INCEPT, AS IF SUCH OFFER OF COVERAGE HAD NEVER BEEN MADE.

*Mercury 000141*



| N/A | Maximum Aggregate Limit of Liability (including Defense Expenses) for all Claims under the Pension and Welfare Benefit Plan Fiduciary Liability Coverage Part | N/A | For the Pension and Welfare Benefit Plan Fiduciary Liability Coverage Part |
|---|---|---|---|
| $3,000,000 | Maximum Aggregate Limit of Liability (including Defense Expenses) for all Claims under the Policy | | |

| RETENTIONS | | OPTIONAL EXTENSION PERIOD |
|---|---|---|
| $0.00 | Each Insured Person under any Coverage Part, but only for Loss as to which indemnification by the Adviser, Mutual Fund, Investment Fund, or Company is not legally permissible or is not made solely by reason of financial insolvency | |
| $500,000 | Each Claim under the Investment Advisors Management Liability Coverage Part | |
| $500,000 | Each Claim under the Investment Advisors Professional Liability Coverage Part | One year at 200% of the annual premium |
| N/A | Each Claim under the Mutual Fund Management and Professional Liability Coverage Part | |
| $500,000 | Each Claim under the Investment Fund Management and Professional Liability Coverage Part | |
| N/A | Each Claim under the Employment Practices Liability Coverage Part | |
| N/A | Each Claim under the Pension and Welfare Benefit Plan Fiduciary Liability Coverage Part | |

**PREMIUM:** ▮▮▮▮▮

**The portion of your annual premium that is attributable to coverage for acts of terrorism is:** ▮▮▮▮.

Commission: ▮▮▮▮

Premium Due Date:  January 13, 2022

**ENDORSEMENTS:**

- Terrorism Insurance Disclosure PN161 12 20
- Office of Foreign Assets Control Notice
- In Witness Endorsement
- Privacy Policy
- Fraud Notice
- NY Amendatory Endorsement GT&C (FD 72 09 11 06)
- NY Coinsurance Endorsement D&O (FD 72 10 11 06) – 0.5%, $5k, $50k
- NY Disclosure Statement (FD 72 07 11 06)
- NY Defense Expenses Disclosure (FD 72 08 11 06)
- Crystal & Company Endorsement (Manuscript 17927 07 15) – Fill In's
- Amend Definition of Claim Endorsement (FD 80 405 08 11)
- Amend Definition of Professional Service Endorsement (Manu 16442 02 14)
- Advisory Board Member Endorsement (FD 80 114 11 04)
- Amend Insured Person Endorsement (FD 80 205 12 06)
- Amend Wrongful Act Endorsement (FD 80 425 12 11)
- General Partner Liability Endorsement (FD 80 142 05 05) - $3M, $300k
- Schedule of Funds (FD 80 06 09 00)  - As Expiring
- Fully Earned Premium Endorsement (XL 80 66 03 11)
- Amend Cancellation Endorsement (FD 80 316 04 09)

2-14176

IF THE TOTAL PREMIUM IS NOT PAID BY THE PREMIUM DUE DATE SET FORTH ABOVE, THE INSURER WILL CANCEL THE COVERAGE FOR NON-PAYMENT OF PREMIUM.  THE EFFECT OF SUCH CANCELLATION WILL BE THAT THE OFFERED COVERAGE SHALL NOT INCEPT, AS IF SUCH OFFER OF COVERAGE HAD NEVER BEEN MADE.

*Mercury 000142*



**THE BINDER IS SUBJECT TO RECEIPT, REVIEW, AND ACCEPTANCE OF THE FOLLOWING ITEMS.
THE ITEMS LISTED BELOW MUST BE RECEIVED WITHIN 10 DAYS.**

- N/A

**2-14176**

IF THE TOTAL PREMIUM IS NOT PAID BY THE PREMIUM DUE DATE SET FORTH ABOVE, THE INSURER WILL CANCEL THE COVERAGE
FOR NON-PAYMENT OF PREMIUM.  THE EFFECT OF SUCH CANCELLATION WILL BE THAT THE OFFERED COVERAGE SHALL NOT
INCEPT, AS IF SUCH OFFER OF COVERAGE HAD NEVER BEEN MADE.



# INVOICE SUMMARY

**Mercury Capital Advisors Group LP**
**ELU180035-21**

| PREMIUM AMOUNT | COMMISSION % | COMMISSION AMOUNT | * TAXES/ SURCHARGES | NET PREMIUM DUE | PREMIUM DUE DATE |
|---|---|---|---|---|---|
| ███ | ███ | ███ | ███ | ███ | January 13, 2022 |

\* Taxes/Surcharges if applicable.

**2-14176**

IF THE TOTAL PREMIUM IS NOT PAID BY THE PREMIUM DUE DATE SET FORTH ABOVE, THE INSURER WILL CANCEL THE COVERAGE FOR NON-PAYMENT OF PREMIUM.  THE EFFECT OF SUCH CANCELLATION WILL BE THAT THE OFFERED COVERAGE SHALL NOT INCEPT, AS IF SUCH OFFER OF COVERAGE HAD NEVER BEEN MADE.

*Mercury 000144*